EDWARD W. BROWNING, Appellant, Respondent, *v.* FREDERICK P. Fox and Others, Copartners Doing Business under the Firm Name and Style of FREDERICK FOX & CO., Respondents, Appellants.

First Department, July 11, 1918.

**Contract — agreement to rent and manage real property — modification of written contract — burden of proof — consideration — temporary relinquishment of immediate right to cancel contract — contract construed — collection of rents prior to occupancy by tenant — when cancellation of contract not within one year — damages — evidence not establishing right of defendants to expense of employing superintendent — accord and satisfaction.**

A party to a written contract who claims that it was modified by a subsequent oral agreement has the burden of proving such modification.

Where a contract employing the defendants to rent and manage certain buildings owned by the plaintiff gave to both parties the right to cancel .

the same, and the plaintiff, on a threat of cancellation by the defendants agreed to hold them harmless against loss if they would continue to act under the contract, there was a consideration for the plaintiff's promise even if the defendants did not give up their right of cancellation. This, because the defendants, by not enforcing their immediate right of cancellation in consideration of the plaintiff's promise to hold them harmless, altered their position for the worse.

Evidence examined, and *held*, insufficient to support a finding that the plaintiff had modified the written contract with the defendants by a subsequent parol agreement.

Where the contract for the management of the building obligated the plaintiff to reimburse the defendants for expenditures one year " after collections begin " and the defendants made certain collections from tenants before the building was ready for occupancy, a cancellation of the contract by the plaintiff not made within one year from the time of said collections by the defendants was not a cancellation within one year under the terms of the contract and it was error for the referee to hold that such collections began at the time the building was ready for occupancy.

Evidence examined, and *held*, not to establish an accord and satisfaction between the plaintiff and defendants.

*Held further*, that the defendants did not establish the right to charge against the plaintiff sums they had expended to pay a superintendent to manage the buildings.

APPEAL by the plaintiff, Edward W. Browning, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 31st day of January, 1917, upon the report of a referee appointed to hear and determine the issues.

Appeal by the defendants, Frederick P. Fox and others, from parts of said judgment.

*Joseph Day Lee* [*Thomas G. Prioleau* with him on the brief], for the appellant, respondent.

*Harry Baer,* for the respondents, appellants.

SHEARN, J.:

This is an action in conversion brought by the plaintiff, the owner of two business buildings in the city of New York, against the defendant real estate agents who managed the buildings for him, to recover the sum of $1,907.63, which plaintiff claims the defendants retained and converted to their own use out of rents collected. The dispute arose out of

defendants' claim to the sums retained and additional sums claimed, some of which were allowed and some of which were disallowed by the referee before whom the action was tried. The result was a judgment in favor of the defendants and against the plaintiff in the sum of $438.12, from which both parties appeal. There was a written agreement with respect to the management of each building. Both contracts were substantially the same except that in the earlier one covering the Thirty-sixth street building the defendants' compensation was to be two and one-half per cent of the rent collected, and in the Fortieth street contract it was three per cent. Both contracts required the defendants to pay brokers their commissions for renting space in the buildings. Neither agreement was for a definite period, but both agreements gave either party the right to cancel and contained a provision that, if the plaintiff cancelled within a year after collections began, plaintiff would pay defendants any amount which they had paid for leasing, in the case of the Fortieth street contract not to exceed $3,500, and in the case of the Thirty-sixth street contract not to exceed $2,500. The only dispute in connection with the Thirty-sixth street building arises out of a claim made by the defendants for $805 paid to one Alfred McKown for his services as superintendent of said building, which claim the referee disallowed.

With respect to the Fortieth street building, the contract for which was made on March 20, 1912, the defendants proceeded to rent and manage same until about March 2, 1914, when the contract was cancelled by the plaintiff. During their management of the Fortieth street building, defendants had earned and retained as commissions $1,441.85 and had paid out to brokers for leasing $2,345.75, or $903.90 in excess of what they had received. In addition, defendants claimed to have become obligated to McKown as superintendent of the Fortieth street building in the sum of $420, which sum, however, they had in their reports never charged to the plaintiff. When the defendants rendered their statement on account of the Fortieth street building on March 1, 1914, which was after an altercation which made it evident that their agency was about to be ended, but which was one day before actual cancellation, they retained out of the rents

then in their hands a sum sufficient to reimburse them for all outlays up to that time.

The defendants make a two-fold claim in support of their right to charge against plaintiff the sums paid to brokers for leasing — one being that there was an oral modification of the Fortieth street contract in December, 1912, on which occasion, as all three defendants testified, but which the plaintiff denied, they told plaintiff of their desire to terminate the contract because of the way it was working out and plaintiff requested them to go on and agreed, in consideration of their not exercising their option and continuing with the contract, to hold the defendants harmless against any loss. The other claim is that the contract was canceled within a year after collections began and that, accordingly, defendants were entitled to charge for leasing up to $3,500. The referee has found in favor of the defendants on both these issues. On the second issue, the decision is claimed to be contrary to the evidence, and on the first issue, that of modification, it is claimed, *first*, that the modification, if made, was without consideration, and *second*, that the finding that it was made is against the weight of the evidence.

The burden of proof to establish the modification was upon the defendants. If the modification was made, there was in my judgment legal consideration for it. It is clear that there would be consideration, if, as the referee found, the defendants surrendered their right to cancel the contract, for thereby they would have given up a valuable legal right to their detriment. But I can find no evidence justifying the finding of the referee that the defendants agreed to continue to run and manage the Fortieth street building " until the formal cancellation of the contract by the plaintiff." Frederick P. Fox's testimony on this head simply shows that the plaintiff urged the defendants not to cancel and said that if they would continue he would hold them harmless. " We discussed the matter together and we decided to continue." James C. Fox's testimony is to the same effect, concluding, " Well, all right, Mr. Browning, under those conditions we will proceed as agents of that building." Friedmann's testimony is to the same effect. Therefore, it does not appear that the defendants gave up their right to exercise their option but merely

consented to go ahead with the contract if they were held harmless. To hold that the defendants gave up their right to cancel would be tantamount to holding that they had to continue in perpetuity, unless plaintiff chose to cancel. But it seems to me, nevertheless, that there was a consideration. The defendants were not obliged to go on with this losing business for a day. They were entitled to exercise an immediate right of cancellation. If, in consideration of plaintiff's promise to hold them harmless, they withdrew their announced intention of quitting and continued on indefinitely, thus altering their position for the worse, there was a sufficient consideration for plaintiff's promise to hold them harmless.

As to whether the agreement was actually made, the question involves the weight of the evidence. The defendants had three witnesses to plaintiff's one. All were interested. The referee, as will be seen from his opinion, considered all the witnesses reputable and equally entitled to credence so far as the worth of their word was concerned. He reached his conclusion, as he says, guided by the probabilities of the case, but as he did not state them, we do not know what he regarded as the probabilities pointing in favor of the defendants. On the part of the plaintiff, it is to be noted that he appears to be a very close, careful and particular man who required the smallest matters to be reduced to writing. Further, at the date of the alleged oral modification, the building was not even finished and as there had been no important leases negotiated defendants did not know how the contract was going to turn out. It thus seems very unlikely that they would at that time have demanded any oral modification. Defendants' only answer to this is " that while in December, 1912, defendants had not made any payments to other brokers, they had already become obligated on account of leases that had already been made and they saw the possibilities of having to pay other commissions for deals pending." As to what possibilities defendants saw, we cannot say, but this statement about having become obligated on account of leases already made appears to me to be wholly unfounded. According to the bill of particulars, the earliest lease negotiated by any other broker was on January 23, 1913, and the only leases negotiated by defendants themselves were two small ones, one on September 24,

1912, the monthly rent being $66.67, and the other on November 30, 1912, the monthly rent being $208.33. Not an item of testimony is referred to by defendants as supporting the probabilities of their claim about demanding a modification in December, 1912. It, therefore, appears to me that, considering the habit of the plaintiff to have the smallest details with reference to his various properties put in writing, the fact that, during the entire period of the contract and the numerous writings between the parties, there is not a scrap of writing referring to any such modification, and considering that nothing whatever had occurred up to December, 1912, to lead to any request for a modification, it must be said that the probabilities are strongly with the plaintiff, and that the defendants wholly failed to sustain the burden of proof required to persuade a court to set aside a contract in writing and substitute in its place a vague and uncertain parol modification thereof.

We come, therefore, to the second point: Was the cancellation on March 2, 1914, within the contract provision that plaintiff should pay the defendants any amount up to but not to exceed $3,500 which they had paid for leasing " if said contract is cancelled by Edward W. Browning before one year after collections begin on the building?" The building was not ready for occupancy until April, 1913. The first lease was made to J. H. Gredinger in September, 1912, and the defendants collected from him $66.67. This rent, according to the testimony of James C. Fox, was for a cigar stand, possession of which was to have been given on January 1, 1913. The tenant took possession in April, 1913. His rent was to have begun on February 1, 1913, and James C. Fox testified that " as per agreement with Mr. Browning that the rent he had paid for February should be applied to the month of April instead of February." He further testified, however, that this was rent for January, 1914, and was held as security, and it so appears in plaintiff's Exhibit 3, a statement rendered by the defendants to the plaintiff dated March 31, 1913, by this item: " 1912 Sept. 24. By Gredinger, J. H., Security rent Jan. 1914. 66.67." Then, too, on November 30, 1912, the Rector Gas Lamp Company paid the defendants $208.33 for rent for February, 1913. They did not get

possession, however, until April and the next rent paid was for May, 1913, so that the rent paid for February was applied to the month of April. When, therefore, did collections begin on the building according to` the meaning of this contract? The referee held that collections began in the month of April, 1913, " the first month for which any tenant actually paid rent." If so, the plaintiff's cancellation was within the year and the defendants would be entitled to charge against the plaintiff the commissions paid to brokers up to $3,500 on the Fortieth street building. There is nothing ambiguous about this provision. Any layman would readily understand the meaning of the phrase " after collections begin on the building " as fixing a time. That phrase does not mean " after rent becomes due " or " after the building is finished " or " after the building is occupied." It is undoubtedly true that this clause was inserted for the protection of the defendants and was intended to give them the benefit of a full year of collections. But it was not a full year after the building was completely filled, or even after it was substantially filled. The parties might readily have stipulated that plaintiff was not to have the right to cancel for a full year after the building was half leased or two-thirds leased or completely leased. The trouble with defendants' position is that no such stipulation was made, but that instead, the parties fixed as beginning the running of plaintiff's right to cancel, coupled with obligation to reimburse the defendants one year " after collections begin." It is a perfectly plain, unambiguous expression that does not justify the court in resorting to inference or extraneous proof to determine what the parties meant. Disregarding the collection of September 24, 1912,. of security rent for January, 1914, it is unquestioned that the defendants on November 30, 1912, collected rent of the Rector Gas Lamp Company for February and that on February 1, 1913, Charles Wittner paid the rent for Gredinger's cigar stand for the month of February. Furthermore, on February sixth defendants collected rent of William Bagley for the month of May and on February seventh rent of James Barry for the month of May. Clearly, therefore, the cancellation by the plaintiff on March 2, 1914, ·was not within a year after collections

began, and the referee has by his decision made a new contract between the parties.

In this view of the case, there is no necessity for considering at length another point raised by the plaintiff, which challenges in any event the right of the defendants to charge the plaintiff with commissions which they paid to young men employed in their own real estate office, one of whom was on a salary, for leasing parts of these premises. It may be noted, however, that as to some of the items involved in these payments to inside brokers, the finding of the referee that these young men actually negotiated the leases is wholly against the weight of the evidence. It is impossible to tell from the evidence just what these items amount to in brokerage, but it is stated in plaintiff's brief that these items do not exceed $100.

The defendants assert an accord and satisfaction. It seems that when they rendered their final account and made the deductions that they erroneously claimed to have been entitled to make, they sent plaintiff a check for the balance along with a statement. Plaintiff, however, refused to receive the check and went to the district attorney's office, charging the defendants with larceny. Defendants appeared before an assistant district attorney and lawyers for both sides were present. Conflicting testimony is given as to just what occurred. It appears, however, that when the assistant district attorney. found that the defendants were willing to pay over the amount that they conceded to be due and had the check with them, he suggested that that be done and the criminal prosecution dropped, evidently seeing that the whole matter was one for the civil courts. Defendants then and there handed over the check which plaintiff had previously refused. Their testimony tends to show that they claimed that they were tendering it in full settlement. Plaintiff's testimony shows the contrary. The weight of the evidence, in my opinion, shows that there was no accord and satisfaction at the district attorney's office. Such adjustment as there was had to do only with the dropping of the criminal prosecution. Plaintiff was insisting upon his right to a larger payment, as he had theretofore done. Nothing had developed

to change his position. The defendants were willing to pay over the amount they conceded to be due, irrespective of any release or compromise. In fact they were obligated so to do. There was no settlement of a disputed account and no accord and satisfaction.

Finally, there is involved the question of defendants' right to charge against the plaintiff the expense of the superintendent whom they engaged for the two buildings. The referee has disallowed this upon the ground that, during all of the period in which the defendants rendered statements to the plaintiff from month to month, in which they charged up all items of expense incurred in the management of the buildings, no charge whatever was made for McKown's superintendence. With respect to the Fortieth street building, defendants did not even claim to have made the payment to McKown until six months after this suit was started, five months after their answer was served and six days before their bill of particulars was verified. The acts of the parties, showing that neither party regarded McKown's superintendence as a current expense chargeable at the time alleged to have been incurred, supports the finding of the referee in disallowing this charge.

The defendants, as the matter turned out, appear to have made a bad bargain, although they doubtless benefited by the wide advertising and prestige incidental to their agency for these two buildings. But the contract was in writing, the defendants were experienced business men and the rights of the parties must be governed by the contract as made.

It follows that the fourth, fifth and thirteenth findings of fact and the referee's conclusion of law must be reversed, and that the plaintiff is entitled to judgment for the sum of $1,907.63, with interest thereon from March 1, 1914, together with the costs and disbursements of this action. Findings should be submitted in accordance herewith.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concurred.

Judgment modified as indicated in opinion. Order to be settled on notice.