## CLIFFORD v. UNITED STATES F. & G. CO.

No. 16565—Opinion Filed June 22, 1926.

Rehearing Denied Sept. 21, 1926.

**1. Contracts—Written Instrument — Presumption of Consideration.**

A written instrument is presumptive evidence of a consideration, and the burden of showing want of consideration sufficient to support the instrument lies with the party seeking to invalidate or avoid it.

**2. Indemnity—Construction of Contracts— Intention of Parties.**

In the interpretation of indemnity contracts the cardinal rule is that which applies to contracts generally, namely, to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles.

**3. Contracts — Construction — When Question for Court.**

Where the terms and conditions of a contract are clear, unambiguous, and undisputed and there is no conflict as to the extrinsic facts and circumstances, the construction of the contract becomes a question for determination by the court.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by United States Fidelity & Guaranty Company against B. A. McFarland, G. H. McElroy, and W. C. Clifford. Judgment for plaintiff, and defendant W. C. Clifford brings error. Affirmed.

McCollum & McCollum and Poe & Lundy, for plaintiff in error.

Thurman S. Hurst and Ames, Love & Cochran, for defendant in error.

Opinion by PINKHAM, C. This action was instituted by the United States Fidelity & Guaranty Company in the district court of Pawnee county against B. A. McFarland, G. H. McElroy, and W. C. Clifford, defendants, on a certain indemnity bond alleged to have been signed by the defendants, and in which they agreed to indemnify the United States Fidelity & Guaranty Company against any loss which it might suffer by reason of its having executed a certain depository bond for the Oklahoma State Bank of Jennings, Okla.

The record discloses that on June 22, 1921, the United States Fidelity & Guaranty Company, as surety, and the Oklahoma State Bank of Jennings, as principal, executed and delivered to the board of county commissioners of Pawnee county its depository bond in the sum of $10,000. Prior to the execution of this $10,000 depository bond, the Oklahoma State Bank of Jennings had been duly designated by the board of county commissioners as a county depository for Pawnee county funds, and upon the execution of the bond the county treasurer deposited county funds in the said bank.

In the $10,000 depository bond it was provided that the term of the bond "is from the 22nd day of June, 1921, at noon, to the 22nd day of June, 1922, standard time"; and further provided that:

"This bond may be extended in full force and effect from year to year by filing in the office of the county treasurer of Pawnee county, Okla., a duly authenticated certificate of extension executed by the surety."

It further provided that:

"This bond may be terminated by the surety by giving 30 days' notice of such intention of termination, filed with the proper officials of Pawnee county, Okla."

On January 12, 1922, an official of the plaintiff company informed the Oklahoma State Bank by letter, signed by the plaintiff's president, that the company was compelled to exercise its right to cancel the $10,000 bond unless it was furnished with an indemnity agreement signed by the bank's stockholders and directors, but that if it was furnished with such indemnity the plaintiff would agree to renew the bond for a lesser sum. The Oklahoma State Bank of Jennings had the indemnity agreement, which had been forwarded to it by the plaintiff company, executed by its stockholders and directors—B. A. McFarland, G. H. McElroy, and W. C. Clifford—and on the following day the president of the bank, B. A. McFarland, wrote a letter to the plaintiff inclosing the indemnity agreement signed, sealed, and acknowledged before a notary public by B. A. McFarland, G. H. McElroy and W. C. Clifford.

After receiving this letter inclosing the indemnity agreement, the plaintiff company continued to remain upon the $10,000 depository bond, and on April 26, 1922, executed a renewal bond in the sum of $7,000 to take effect at the expiration of the $10,000 bond; that is to say, at noon, standard time, on June 22, 1922. This $7,000 depository bond was the same as the $10,000 bond, except that it was for $7,000 instead of $10,000. It was executed prior to the expiration of the $10,000 depository bond, and was to take effect at the time the $10,000 bond would have otherwise expired.

The evidence shows that this $7,000 depository bond was considered by the county treasurer as a renewal of the $10,000 bond for a lesser sum, and was delivered to the Oklahoma State Bank of Jennings by the plaintiff company as a renewal bond, and was so treated by the plaintiff and the bank.

The record shows that after the $7,000 bond became effective, and while there was still $5,000 of Pawnee county funds on deposit in the Oklahoma State Bank of Jennings, the bank, on December 29, 1922, failed and was taken over by the Bank Commissioner of the state of Oklahoma as an insolvent institution.

Demand was at once made upon plaintiff company by Pawnee county for the payment of its deposit, and on March 15, 1923, the plaintiff satisfied its liability under the $7,000 depository bond by paying to Pawnee county the sum of $5,042.50. The plaintiff then made demand upon the defendants, W. C. Clifford, B. A. McFarland, and G. H. McElroy, for reimbursement under the terms and conditions of the indemnity bond, and upon their refusal to comply with this demand instituted this suit to recover under the indemnity bond the amount of its loss; that is, $5,042.50, with interest and costs.

It appears that while the case was pending and before it was called for trial, the Bank Commissioner paid the plaintiff a dividend of 25 per cent., which reduced the amount of the plaintiff's claim to that extent.

The case was tried before a jury on the 28th day of October, 1924. After both parties had rested, the plaintiff and the defendant W. C. Clifford each interposed a

motion for a directed verdict, and thereupon the court instructed the jury to return a verdict in favor of the plaintiff and against the defendants B. A. McFarland and W. C. Clifford, for the sum of $4,143.31, with interest. Judgment was entered upon the verdict, and it has become final as to the defendant B. A. McFarland. The defendant W. C. Clifford prosecutes this appeal.

For reversal of the judgment the defendant, in his brief, submits three propositions: The first of which is that there was no consideration for the signing of the indemnity bond in question, for the reason that the surety company was already bound by its contract and that the indemnity bond was signed after the surety had become bound as surety.

It is argued under this proposition, that in view of the fact that the indemnity agreement was executed subsequent to, rather than contemporaneous with, the execution of the $10,000 depository bond, it must be supported, in order to bind him, by a new and independent consideration. Authorities are cited in support of this proposition. These authorities are not questioned; but an examination of the record in this case discloses, we think, ample and independent consideration for the execution of the indemnity agreement.

Consideration is defined in sec. 5019, C. S. 1921, as follows:

"Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

The record discloses that the plaintiff surrendered its right upon giving 30 days' notice to the proper officials of Pawnee county, to cancel the $10,000 depository bond, and it did something which it had a right not to do: that is, it agreed and carried out its agreement to renew the $10,000 bond for the sum of $7,000 on or before the expiration date of the $10,000 bond. In January, 1922, the plaintiff was liable as surety for the Oklahoma State Bank of Jennings upon the $10,000 depository bond, and under the terms of the bond had the right to terminate its liability by serving notice of its intention to terminate it upon the proper officials of Pawnee county, and it also had the right to refuse to renew the $10,000 bond by the execution of a renewal before its expiration date. Had the plaintiff company

not surrendered these rights in exchange for the execution of the indemnity bond it would not have been called upon to pay the sum of $5,042.50 on March 15, 1923.

We think there was a consideration for the execution of the indemnity agreement in that the plaintiff withdrew, surrendered, and gave up its announced intention contained in its letters to the Oklahoma State Bank of Jennings, to terminate its liability under the $10,000 bond by serving notice upon the proper officials of Pawnee county. The consideration for the execution of the indemnity agreement consisted not only of plaintiff's agreeing and carrying out its agreement not to exercise its right to cancel the $10,000 depository bond, but also in its agreeing and carrying out its agreement to renew the $10,000 depository bond for a lesser sum.

In the case of Browning v. Fox, decided by the Appellate Division of the Supreme Court of New York in 1918, and reported in 171 N. Y. Supp. 648, it is held in the second subdivision of the syllabus:

"Where either party to a contract had the option of canceling the contract, the withdrawal by one party of an announced intention of quitting, and continuing on indefinitely, on the promise of the other party to hold him harmless, was sufficient consideration for the promise to hold harmless."

In the body of the opinion in the above case it is said:

"The defendants were not obligated to go on with this losing business for a day. They were entitled to exercise an immediate right of cancellation. If, in consideration of plaintiff's promise to hold them harmless, they withdrew their announced intention of quitting, and continued on indefinitely, thus altering their position for the worse, there was a sufficient consideration for plaintiff's promise to hold them harmless."

The question raised by the defendant under this proposition was before this court in the case of Koller v. American Surety Co., 77 Okla. 149, 187 Pac. 205, and was there decided adversely to the defendant's first proposition.

In that case the American Surety Company had executed a $5,000 depository bond to the board of county commissioners of Kay county to secure deposits of Kay county funds in the Ponca State Bank at Ponca City, Okla. After this bond had been continued for three successive years the bank made application to the surety company for a fourth continuance, and upon the receipt of this application the manager for the

American Surety Company advised the bank that it was necessary that the company have an indemnity agreement before it would renew the bond, just as in the instant case the plaintiff, in January, 1922, advised the Oklahoma State Bank of Jennings that it would be necessary for it to furnish the United States Fidelity & Guaranty Company with an indemnity agreement before it would surrender its right to cancel the $10,000 depository bond, and would agree to renew that bond for a lesser sum. In compliance with the letter from the American Surety Company the Ponca State Bank furnished the surety company with the indemnity agreement requested, and thereupon the surety company continued the $5,000 county bond for another year. Mr. Koller was one of the directors who signed the indemnity agreement, and, after the bank failed and the American Surety Company had been called upon to pay its liability, he gave to the surety company, to indemnify it against loss and in compliance with the terms of the indemnity agreement, a mortgage upon certain real estate which he then owned.

The American Surety Company then brought suit to foreclose this mortgage against Mr. Koller, and he pleaded that there was no consideration for the execution of the indemnity agreement, or for the mortgage given, in pursuance thereof. The lower court directed a verdict for the American Surety Company, and on appeal it was held by this court that the indemnity agreement was supported by a valuable consideration.

Defendant's second proposition is to the effect that the lower court erred in its construction of the indemnity agreement, and argues that it was not intended to cover renewals of the $10,000 bond; that the $7,000 bond was not a renewal of the $10,000 bond; and that in any event the defendant has been released because the amount of the renewal bond was reduced from $10,000 to $7,000.

The plaintiff agreed at the time the indemnity agreement was executed and delivered to it, not only to continue on the $10,000 bond, but to renew it at or before the expiration date for a lesser sum, and in consideration of this understanding on the part of the plaintiff company the indemnity agreement was made to cover not only the $10,000 bond but any renewal thereof.

The indemnity agreement itself provided:

"Whereas, the principal desires the United States Fidelity & Guaranty Company to renew the said bond, or continue the same in its present or lesser amount for the periods as therein specified; and * * * whereas, it is expressly understood that this indemnity agreement remains in full force and effect so long as the said bond or any renewal thereof continues in force. * * *"

The lower court held that the indemnity agreement remained in force so long as the $10,000 bond or any renewal thereof was in existence. We think the court was correct in thus holding. All of the negotiations leading up to the execution of the indemnity agreement indicate that it was the intention of the parties that the plaintiff company should be indemnified, not only as against liability and loss upon the $10,000 bond, but upon any renewal thereof. and this intention was written into the indemnity agreement itself in plain and unambiguous language.

It is further contended that the term "renewal" simply means an extension or continuation of a former obligation; that the $7,000 bond was not such an extension or continuation, but a new bond with new terms and conditions, and that it was therefore not embraced within the phrase "any renewal thereof."

In the case of Proctor Coal Co. v. United States Fidelity & Guaranty Company, 124 Fed. 424, 427, the United States District Court of the Northern District of Georgia. in interpreting the terms and conditions of a fidelity bond, said:

"I think the contention of counsel for defendant that these renewals are separate and distinct contracts is sound. It is urged that certain language in the bond shows that it was intended to be a continuous contract covering the period of the bond or of any subsequent renewals. The language referred to is this: 'Make good and reimburse to the employer all and any pecuniary loss sustained by the employer,' etc., 'occurring during the continuance of this bond or any renewal thereof.' * * * The correct view seems to be that each renewal is a separate and distinct contract, and such I think is the effect of the authorities on the subject."

The courts have also uniformly held that the word "renewal," as used in that clause of a lease giving the lessee an option of renewal, imports and requires the execution of a new lease. Taylor on Landlord and Tenant, sec. 332.

In the case of Grant v. Collins, 157 Ky. 36, 162 S. W. 539, Ann. Cas. 1915D, 249, it is said:

"There is a distinction between a stipulation in a lease to renew it for an additional term and one to extend it, in that a

stipulation to renew requires the making of a new lease, while one to extend does not."

The courts have also held that the word "renew" or "renewal," as applied to or used in notes, certificates of deposit, and bills of exchange, implies, and, for that matter, requires, the execution of a new instrument; in other words, the creation of a new contract. Parchen v. Chessman (Mont.) 164 Pac. 531; Sponhaur v. Malloy (Ind. App.) 52 N. E. 245; State v. Keifer (Iowa) 163 N. W. 698; Wilcox v. McCain Land & Live Stock Co. (S. D.) 159 N. W. 49.

The defendant further contends that he has been released, because the plaintiff, instead of executing a renewal bond for $10,000, reduced its liability and the liability of the defendant by executing a renewal bond for a smaller amount, to wit, $7,000; and authorities are cited to the effect that a surety is relieved whenever the terms and conditions of the obligation of his principal have been varied or changed without his consent.

This well settled rule, however, has no application where the surety agrees in advance that a new obligation may be executed, and that he will be liable not only for the original obligation but for any renewals thereof. The indemnity agreement in this case expressly provided that it should "remain in full force and effect so long as the $10,000 bond or any renewal thereof was in force."

When the defendant signed the indemnity agreement, he agreed to reimburse and indemnify the plaintiff as against loss, not only under the $10,000 bond, but any renewal thereof, and for this reason, we think, he is not in a position to claim that he has been released because the plaintiff renewed the bond for $7,000, especially in view of the fact disclosed by the record that it was understood by the parties, as evidenced by the correspondence and the indemnity agreement itself, that the $10,000 bond was to be reduced, and because of the further fact that the defendant expressly agreed to be liable not for a renewal, but for any renewal.

We conclude, with reference to this second proposition, that the indemnity agreement was intended to, and by its terms did, cover not only the $10,000 depository bond, but any renewal thereof, and that the $7,000 bond under which the plaintiff company paid its loss was a renewal of the $10,000 depository bond.

Defendant under his third proposition contends that the trial court erred in refusing to submit to the jury the question of the intention of the parties at the time the bond was executed. Numerous authorities are cited in support of the proposition presented. A careful examination, however, of the record in the instant case discloses that there was no dispute at the trial as to the terms and conditions of the indemnity agreement, and there was no conflict between the testimony of the various witnesses called on behalf of the plaintiff and defendant. It appears that the case was tried as though upon an agreed statement of facts. The courts have uniformly held that where the terms and conditions of a contract, whether oral or written, are clear, unambiguous, and undisputed, and where there is no conflict in the testimony of the various witnesses as to the surrounding facts and circumstances, the interpretation of the contract becomes a question of law for determination by the court. 6 R. C. L. 862, 863.

Many decisions of this court have announced the rule that the construction of a clear and unambiguous contract is for the court. Levin v. Cook, 84 Okla. 55, 202 Pac. 299; Tootle-Campbell Dry Goods Co. v. Mounts, 90 Okla. 40, 216 Pac. 113; Wright v. State ex rel., 104 Okla. 57, 230 Pac. 268.

The terms and conditions of the indemnity agreement were clear, unambiguous, and undisputed, and there was likewise no conflict in the testimony of any of the witnesses.

In these circumstances the lower court properly ruled that the interpretation and construction of the indemnity agreement was a matter for the court to decide.

We think the judgment of the lower court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 760 § 946; 6 R. C. L. pp. 650, 651; 2 R. C. L. Supp. p. 172; 4 R. C. L. Supp. p. 432. (2) 13 C. J. p. 521 § 482; 31 C. J. p. 426 § 18; 6 R. C. L. p. 835; 2 R. C. L. Supp. p. 219; 4 R. C. L. Supp. p. 444; 5 R. C. L. Supp. p. 372. (3) 13 C. J. p. 783 § 996; 6 R. C. L. p. 862; 2 R. C. L. Supp. p. 234; 4 R. C. L. Supp. 448; 5 R. C. L. Supp. p. 374.