OSCN Found Document:BANK OF AMERICA, N.A. v. ASH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BANK OF AMERICA, N.A. v. ASH
2015 OK CIV APP 69
Case Number: 113006
Decided: 08/07/2015
Mandate Issued: 09/24/2015
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2015 OK CIV APP 69, __ P.3d __

 


BANK OF AMERICA, N.A., Plaintiff/Appellee,
v.
MICHAEL J. ASH, Defendant/Appellant,
and
Spouse, if any, of Michael J. Ash and John Doe, Occupant, Defendant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA
HONORABLE BERNARD M. JONES, TRIAL JUDGE

REVERSED AND REMANDED

A. Grant Schwabe, Lauren Smith, KIVELL, RAYMENT AND FRANCIS, P.C., Tulsa, Oklahoma, for Plaintiff/Appellee,
Babette Patton, BREATHWIT & PATTON, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant.


Wm. C. Hetherington, Jr., Chief Judge:
¶1 Defendant Michael Ash (Ash) seeks review of the trial court judgment granting summary judgment in favor of Plaintiff Bank of America, N.A. (Bank) on its foreclosure petition describing real estate situated in Oklahoma City, Oklahoma. Ash challenges Bank's standing to pursue the action and its entitlement to judgment as a matter of law. We reverse the order and remand for further proceedings.
STANDARD OF REVIEW
¶2 Ash appeals without appellate briefs in conformance with the procedures for the appellate accelerated docket, Okla.Sup.Ct.R. 1.36, 12 O.S.Supp.2003, Ch. 15, App. 1. An appeal on summary judgment comes to this court as a de novo review. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing the summary judgment. Rose v. Sapulpa Rural Water Co., 1981 OK 85, 621 P.2d 752. Summary judgment is improper if, under the evidentiary materials, reasonable individuals could reach different factual conclusions. Gaines v. Comanche County Medical Hospital, 2006 OK 39, ¶ 4, 143 P.3d 203.
CASE HISTORY
¶3 In January of 2012, Bank filed a foreclosure petition against Ash, alleging on July 23, 1993, he executed and delivered to Sears Mortgage Corporation ("Sears"): 1) a promissory note payable to Sears "in the principal sum of $37,390.80," and 2) a mortgage on the subject property in Oklahoma County filed in August of 1993. After alleging it "is in possession of and is the holder of and is entitled to enforce said note," Bank further alleged 1) Ash defaulted on its monthly payment due November 1, 2010; 2) the mortgage was assigned to Bank on November 9, 2012; and 3) "there is due and owing on said note and mortgage the principal sum of $29,739.73 with interest. . .at the rate of 6% per annum from October 1, 2010, until paid," and fees, costs, late charges, etc.
¶4 Three exhibits were attached to Bank's petition. Exhibit 1 included copies of two promissory notes. The first, a two-page "Note" dated July 23, 1993, is executed by Ash and payable to Sears, the Lender, and describes a specific street address in Oklahoma City, Oklahoma. The Note states "[i]n return for a loan received from Lender," Ash "promises to pay the principal sum of . . . (U.S. $36,616.00), plus interest, to the order of Lender," the "[i]nterest on the unpaid principal is eight percent (8%) per year until the full amount had been paid," and Ash's "promise to pay is secured by a mortgage. . .that is dated the same date as this Note and called the 'Security Instrument.'" The Note sets a monthly payment of principal and interest in the amount of $268.68, with the first payment beginning September 1, 1993 and a "Maturity Date" of August 1, 2023 ("Original Note"). The Original Note has two undated blank indorsements, one by Sears and the other by Countrywide Home Loan, Inc. ("Countrywide").
¶5 The second note in Exhibit 1 is titled "Amended and Restated Note." The second note, like the Original Note, is dated July 23, 1993, describes the same property address, Ash is the sole "Borrower," and states it was given "in return for a loan received from Lender" and is "secured by a mortgage. . .that is dated the same date as this Note and called the 'Security Instrument.'" Unlike the Original Note, Countrywide is identified as the "Lender," the principal sum Ash promises to pay "to the order of Lender" is $37,390.80, the interest rate is six percent (6%) per year, and the first payment lowered to $266.17 is due on "April 01, 2004" with a new maturity date of "June 01, 2024." The Amended and Restated Note contains no indorsements.
¶6 Exhibit 2 to Bank's petition is a copy of a "Mortgage" dated July 23, 1993 executed by Ash, which states, in pertinent part, that he owes Sears
...the principal sum of . . . (U.S. $36,616.00). This debt is evidenced by [Ash's] note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on August 1, 2023. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) . . . (Italics added.)
Exhibit 3 of the petition is an Assignment Of Mortgage Of Real Estate ("Mortgage Assignment"), by which Countrywide assigns to Bank "all [Countrywide's] right, title and interest in and to the mortgage executed by [Ash] to [Sears] dated July 23, 1993 . . . together with the note, debts and claims secured thereby, covering . . . [real estate description]." (Emphasis added.) The Mortgage Assignment was filed January 3, 2013, twenty-eight days before the filing of the foreclosure petition.
¶7 On February 27, 2013, Ash moved to dismiss Bank's petition, alleging lack of standing based on Bank's "failure to establish that it is the holder of the governing instrument or otherwise entitled to enforce the instrument." Ash did not attach any evidentiary material, but instead relied on the following "facts set out in petition and exhibits" to support dismissal: 1) the Original Note has two blank indorsements, one from Sears and another from Countrywide; 2) Bank does not mention the "Amended and Restated Note" in its petition, which note "purports to be dated July 23, 1993, the same date as the Original Note" and "is from Ash to [Countrywide]"; 3) the amount of the loan under the Amended and Restated Note is "$37,390.80, as opposed to the Original Note with a loan amount of $36,616.00"; 4) payments under the Amended and Restated Note begin April 1, 2004 with final payment to be made June 1, 2034(sic)"; and 5) the Amended and Restated Note "does not contain an indorsement."
¶8 Ash argued Bank is not entitled to enforce the Amended and Restated Note for three reasons: 1) the latter note "supersedes the Original Note and is the governing instrument in this action," 2) the Amended and Restated Note is unindorsed so Bank cannot be a holder, 3) there is no allegation that Bank is in "possession" of the unindorsed Amended and Restated Note and therefore it cannot be a "nonholder in possession" of that note. As an additional basis for dismissing Bank's petition, Ash claimed "the purported assignment of the mortgage on November 9, 2012 from [Countrywide] (which actually ceased to exist in 2008) to [Bank], is of no effect in establishing [Bank's] right to enforce the Amended and Restated Note." (Parenthetical in original.)
¶9 Bank responded, requesting denial of Ash's motion and "to allow . . . amendment to its original petition pursuant to . . . HSBC Bank USA v. Lyon, 2012 OK 10, [276 P.3d 1002]." Bank explained the amendment was needed "to attach as an Exhibit to the Petition a copy of the Amended and Reinstated(sic) Note properly endorsed in order to establish it was entitled to enforce the Note at the time of the filing of the original Petition." Ash replied to Bank's amendment request, stating "he has no objection to [Bank's] Application for Leave to Amend Petition." The certified copy of the court appearance dockets indicates the trial court overruled Ash's motion to dismiss for lack of standing and granted Bank "leave to amend within 30 days."[1]
¶10 On May 22, 2013, Bank filed an Amended Petition, stating it "realleges, restates and incorporates herein its original petition" and specifically alleges it "was the holder or entity entitled to enforce the note and the mortgage securing it at the time of the filing of the Petition. A copy of the endorsed note is attached hereto, marked Exhibit 'A' and incorporated herein by reference."[2] Bank again prayed for judgment in personam and in rem against Ash in the amount of $29,739.73 with accrued interest thereon, "plus interest accruing at the rate of 6% per annum from October 1, 2010, until paid..." and requested "[t]hat said purchase money mortgage be foreclosed and . . .be declared a valid first and prior lien upon the real estate."
¶11 Copies of the Original Note and the Amended and Restated Note were both attached to Bank's Amended Petition, but there is no exhibit marked as "A." On the second page of the Original Note attached to Bank's Amended Petition, the blank indorsement by Sears had been converted to a special indorsement by stamping "Countrywide Home Loans Inc." on the line below "Pay to the Order of." No change had been made to the blank indorsement by Countrywide.
¶12 The previously unindorsed Amended and Restated Note now included two undated indorsements: 1) a special indorsement to "Bank of America, N.A." from "Countrywide Home Loans, Inc. by Recontrust Company, N.A. as attorney-in-fact" and 2) a blank indorsement from "Bank of America, N.A. by Recontrust Company, N.A. as attorney-in-fact." Both indorsements were signed by the same person, "Margarita Padilla, Vice President."
¶13 On June 5, 2013, Ash filed an Answer to Bank's Amended Petition, admitting his execution of the July 23, 1993 Note to Sears, but denying the principal sum stated in the Petition. He also admitted signing "an Amended and Restated Note dated July 23, 1993, for the amount stated in the Petition showing payments to begin on April 1, 2004" and denied the remaining allegations regarding Bank's alleged possession, status as holder and entitlement to enforce said note. Ash admitted the allegations regarding his execution of the Mortgage on July 23, 1993 and the filing dates of the Mortgage and the Mortgage Assignment, but clarified the latter was signed by Countrywide, not Sears. Ash specifically denied all the allegations concerning his alleged default, the amount due and owing, the other defendants' claim to the subject property, and the "validity of the debt." He raised as an affirmative defense Bank's lack of standing to pursue this claim and demanded production of the original note and original amended note.
¶14 Six months later, Bank moved for summary judgment, claiming to be "holder of the Note sued upon, and of the Mortgage which is security therefore," which present status it claimed it "received due assignment through mesne assignments of record or conveyance via mortgage servicing transfer." As additional undisputed material facts, Bank alleged Ash: 1) "has not tendered sufficient monies to reinstate the Note," 2) "the Note has not been extended or renewed," and 3) "[Bank and Ash] have not made any arrangements or agreements to delay the entry of judgment in this foreclosure action." Bank finally alleged "[t]he Note and Mortgage are in full force and effect."
¶15 To support summary judgment in its favor, Bank attached Exhibit "1," an affidavit from Elmer A. Jackson, Jr., Bank's Assistant Vice President, Exhibit "A," copies of the same two notes attached to Bank's Amended Petition, Exhibit "B," the Mortgage dated July 23, 1993, from Ash to Sears, and Exhibit "C," the Mortgage Assignment from Countrywide to Bank.
¶16 Ash filed an objection to Bank's summary judgment motion combined with an alternative motion to dismiss.[3] Following receipt of Bank's reply, the trial court filed its Final Journal Entry of Judgment, overruling Ash's alternative motion to dismiss, finding Ash is "a single person" and "one and the same as Defendant, John Doe, Occupant," and dismissing from the action the "Defendant, Spouse, if any, of [Ash]." The trial court sustained Bank's motion for summary judgment, finding, in pertinent part, that Ash "made, executed and delivered the Note and Mortgage sued upon by [Bank], and that [Bank] is the holder thereof." The trial court granted Bank "judgment, in personam and in rem, of and from Ash" for the "balance due and owing and unpaid thereupon in the amount of $29,739.73 with accrued interest thereon, plus interest accruing at the rate of 6% per annum from October 1, 2010," ordered payment to Bank of its costs of the action and $2,862.00 in reasonable attorney fees "as provided for in the Note and Mortgage." Ash's appeal followed.
ANALYSIS
¶17 "To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing." Bank of America, N.A. v. Kabba, 2012 OK 23, ¶ 5, 276 P.3d 1006. "A foreclosing entity has the burden of proving it is a 'person entitled to enforce an instrument' by showing it was '(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [§] 3-309 or 3-418(d) of [Title 12A].'" Id. (citing 12A O.S. 2001 § 3-301).[4]
¶18 In this case, Bank claims in its motion for summary judgment that it is the "holder of the Note sued upon and of the Mortgage." "To demonstrate you are the 'holder' of the note you must establish you are in possession of the note and the note is either 'payable to bearer' (blank indorsement) or to an identified person that is the person in possession (special indorsement)."[5] Kabba, 2012 OK 23, ¶ 6.
¶19 In this case, we conclude Bank's alleged lack of standing based on the previously unindorsed Amended and Restated Note has been cured by the filing of an amended petition and a copy of that note with 1) a special indorsement to Bank from Recontrust Company N.A., as the attorney-in-fact for Countrywide, and 2) a blank indorsement from Bank by the same attorney-in-fact, both undisputedly obtained between the filing of the initial petition and the amended petition. HSBC Bank USA v. Lyon, 2012 OK 10, 276 P.3d 1002. Although undated, the two indorsements on the Amended and Restated Note show Bank's "right to enforce at the time of 'amendment' which "is sufficient to cure the standing defect pursuant to Supreme Court precedent." Deutsche Bank National Trust Company, v. Roesler, 2015 OK CIV APP 36, ¶ 18, __ P.3d __ (mandate issued April 15, 2015).
¶20 Further, we are not persuaded by Ash's argument questioning Recontrust Company N.A.'s authority to indorse the Amended and Restated Note, for which it cites no authority. According to the UCC comment 1 to 12A O.S. 2011 § 3-201, "[n]egotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, either directly or through an agent." An attorney in fact is an agent. See Chickasaw Telephone Co. v. Drabek, 1996 OK 76, 921 P.2d 333. Mere possession by an agent is possession by its principal. Bank of America, N.A. vs. Morris, 2014 OK CIV APP 91, ¶ 15, 338 P.3d 138. "Possession of a suitably endorsed note is prima facie evidence of ownership by the holder." Roesler, 2015 OK CIV APP 36, ¶ 20 (citing Cahill v. Kilgore, 1960 OK 88, ¶ 15, 350 P.2d 928.) Thus, Bank has met this part of its burden to establish its entitlement to enforce the Amended and Restated Note.
¶21 We reach the same conclusion regarding the Original Note on which Bank secured a special indorsement to Countrywide from Sears between the filing of the initial petition and the Amended Petition. Pursuant to 12A O.S. § 3-205(c), "[t]he holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable."[6] We also agree with Bank that Sears' special indorsement to Countrywide establishes the Original Note's history as well as Countrywide's authority to execute its blank indorsement. By the latter's negotiation of the Original Note, Bank has met its burden to establish its entitlement to enforce the Original Note.
¶22 Despite Bank's showing of standing, we conclude the accelerated record does not establish Bank's entitlement to summary judgment as a matter of law. In Deutsche Bank National Trust v. Brumbaugh, 2012 OK 3, 270 P.3d 151, the plaintiff bank's standing to bring a foreclosure action was at issue but there was no dispute "the note sued upon" included the original note executed by the debtors and a subsequent loan modification agreement they executed with a different bank. In this case, Bank's standing is challenged and Ash, although admitting execution of two notes to different lenders, not only disputes the notes were executed on the same date and that the original note is still in full force and effect, but also that the two notes should be treated as the same note.
¶23 To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action. Akin v. Missouri Pacific R. Co., 1998 OK 102, ¶ 9, 977 P.2d 1040. In this case, Bank, as plaintiff and movant on summary judgment, must defeat Ash's contractual defenses based on the subsequent note.
¶24 Bank alleges in its foreclosure petitions and as an undisputed "material fact" in its summary judgment motion that it is a holder of the Original Note from Ash to Sears but describes it with the principal and interest rate set in the Amended & Restated Note between Ash and Countrywide, i.e., $37,390.80 and 6% interest. However, Bank's own evidentiary materials attached to its motion demonstrate Ash promised to pay Sears the principal amount of $36,616.00 at 8% interest rate with a different monthly payment and amortization period.
¶25 Replying to Ash's arguments the Original Note was superseded by the Amended and Restated Note and the latter note is the "operative agreement," Bank contends, without citing any legal authority, that the two notes have a "chain of title by virtue of valid endorsements" and "bear the date July 23, 1993 in order to show that the two instruments are connected." It further claims the Amended and Restated Note "amended the original note dated July 23, 1993. The matching dates bear no relevance as to the issue of standing for the Plaintiff to enforce the note. [Ash] signed both the original note and the Amended Reinstated(sic) note." Bank finally argues "the original note and Amended and Reinstated(sic) Note are considered to be the same document in [its] Motion for Summary Judgment," further explaining:
When [Bank] references the default and a failure to reinstate the note, it refers to the Amended and Reinstated(sic) Note's payment terms which supersede the original Note, but only as to when the next payments would be due which was April 1, 2004. From then on, [Ash] was required to make payments according to the rest of the Original Note's terms except in regards to the portion that was amended in the Amended and Reinstated(sic) Note." (Italics added.)
¶26 However, Bank's affidavit from its Assistant Vice President, Mr. Jackson, does not explain Bank's undisputed "material fact" that describes the parties to the Original Note but gives the terms from the Amended and Restated Note. Instead, his affidavit simply states "[Bank], directly or through an agent, has possession of the promissory note and is entitled to enforce the Note." Jackson does not state that the phrases, "the promissory note" or "the Note," refer to both notes, does not explain how the two notes are "connected" or why they should be treated as the same note. Therefore, Bank's positions the two notes are "connected" and should be considered the same note is clearly not supported by Jackson's affidavit.
¶27 A promissory note is a negotiable instrument and a negotiable instrument is a contract. Wells Fargo Bank, N.A. v. Heath, 2012 OK 54, ¶ 12, 280 P.3d 328. The cardinal rule in contract interpretation is to determine and to give effect to the contractual intent of the parties. Sunrizon Homes, Inc. v. American Guaranty Investment Company, 1988 OK 145, ¶ 10, 782 P.2d 103. Subject to statutory exceptions, contracts are to be construed as written.
¶28 According to Ash's authority, "[b]efore full performance, contractual obligations may be discharged by a subsequent agreement whose effect is to alter, modify or supersede the terms of the original agreement or to rescind it altogether." Shawnee Hospital Authority v. Dow Construction Inc., 1990 OK 137, 812 P.2d 1354. More specific to the subject at hand, the question of whether the giving of a new note and mortgage satisfies the first note and mortgage on the same property is a question of fact concerning the parties' intent at the time the subsequent note and mortgage were executed. See Brady v. Interstate Mortgage Trust, 1924 OK 13, ¶ 11, 223 P. 145; CJS Bills and Notes, §151. There has been no showing that a new mortgage was taken in this case, however, the Mortgage which Bank seeks to foreclose has express language which provides it "secures repayment of the debt evidenced by the Note . . . and all renewals, extensions and modifications."[7]
¶29 The trial court's summary judgment and final judgment in favor of Bank refers only to "the Note and the Mortgage sued upon." Therefore, the court either simply accepted Bank's argument or inferred from the identical date, the same debtor and same property address on the two notes, together with its title, that the Amended and Restated Note modified the Original Note. We conclude such inference is not reasonable considering there are no account or loan numbers on either note which might somehow connect the two notes. The Amended and Restated Note does not refer in any way to the Original Note or to its parties. The Amended and Restated Note does not state the Original Note is still in full force and effect. More importantly, the Amended and Restated Note also lacks any language that it should not be construed as satisfying the debt owed on the Original Note.
¶30 Consequently, we find there is a disputed question of material fact regarding the parties' intent when executing the Amended and Restated Note as to its impact on the obligation Ash owed under the Original Note, and whether the Amended and Restated Note is a "renewal, extension, or modification" such that it too is secured by the original mortgage. "To foreclose the mortgage one must be a person entitled to enforce the note which is secured by the mortgage." (Emphasis added.) Residential Funding Real Estate Holdings, LLC v. Adams, 2012 OK 49, ¶ 23, 279 P.3d 788. We conclude Bank failed to demonstrate its entitlement to summary judgment and to final judgment in this foreclosure action, reverse the trial court's judgment, and remand the case for further proceedings.

REVERSED AND REMANDED

MITCHELL, P.J., and JOPLIN, J., concur.

FOOTNOTES

[1] This ruling is not included in the accelerated record. We made no requirement for its inclusion since Ash appeals the order granting summary judgment.

[2] We note this recital from Bank's Amended Petition because Bank did not re-attach to its Amended Petition either the mortgage or its assignment. Even though these same exhibits are not specifically mentioned as being incorporated, we assume the same recital is sufficient to incorporate them.

[3] Ash filed an "Objection to Plaintiff's Motion for Summary Judgment and Alternative Motion To Dismiss If Plaintiff Does Not Have Possession Of The Original Note And The Original Amended And Restated Note."

[4] The 2001 version is identical to the current version, 12A O.S. 2011 §3-301, the third option under which "is not very common and pertains to person who is not in possession of the note but is entitled to enforce the note. [It] is based upon a person not being reasonably able to obtain possession of the note because it was lost, destroyed or in the wrongful possession of another." Residential Funding Real Estate Holdings, LLC v. Adams, 2012 OK 49, n. 12, 279 P.3d 788, 797.

[5] As used in § 3-301, "holder," which, in pertinent part, is still defined by 12A O.S. 2011 §1-201(b)(21)(A) as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;"

[6] According to 11 Am. Jur. 2d Bills and Notes § 201, "[w]hile ordinarily the blank indorsement would be converted to a special indorsement by the transferee who holds under the blank indorsement by identifying himself or herself as the indorsee, any subsequent possessor of an instrument indorsed in blank may make the conversion."

[7] "'Renew' or 'renewal' as applied to or used in notes, certificates of deposit, and bills of exchange implies and requires execution of new instrument." Clifford v. U.S. Fidelity & Guaranty Co., 1926 OK 564, ¶ 18, 249 P. 938. An "extension" of time or payment means a valid and binding contract to delay the enforcement of the instrument. CJS Bills and Notes, § 142. The word "modify" means to alter or change in incidental or subordinate features, or to enlarge, extend, limit or reduce. Cartwright v. Atlas Chemical Industries, Inc., 1981 OK 4, ¶ 8, 623 P.2d 606, 610.





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2014 OK CIV APP 91, 338 P.3d 138, BANK OF AMERICA, N.A. v. MORRIS
Discussed
 2015 OK CIV APP 36, 348 P.3d 707, DEUTSCHE BANK NATIONAL TRUST COMPANY v. ROESLER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 145, 782 P.2d 103, 59 OBJ 3468, Sunrizon Homes, Inc. v. American Guar. Inv. Corp.
Discussed
 1990 OK 137, 812 P.2d 1351, 62 OBJ 50, Shawnee Hosp. Authority v. Dow Const., Inc.
Cited
 1960 OK 88, 350 P.2d 928, CAHILL v. KILGORE
Discussed
 1924 OK 13, 223 P. 145, 96 Okla. 293, BRADY v. INTERSTATE MORTGAGE TRUST CO.
Discussed
 2006 OK 39, 143 P.3d 203, GAINES v. COMANCHE COUNTY MEDICAL HOSPITAL
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 1996 OK 76, 921 P.2d 333, 67 OBJ 2232, Chickasaw Telephone Co. v. Drabek
Discussed
 2012 OK 3, 270 P.3d 151, DEUTSCHE BANK NATIONAL TRUST v. BRUMBAUGH
Discussed
 2012 OK 10, 276 P.3d 1002, HSBC BANK USA v. LYON
Discussed at Length
 2012 OK 23, 276 P.3d 1006, BANK OF AMERICA, NA v. KABBA
Discussed at Length
 2012 OK 49, 279 P.3d 788, RESIDENTIAL FUNDING REAL ESTATE HOLDINGS, LLC v. ADAMS
Discussed at Length
 2012 OK 54, 280 P.3d 328, WELLS FARGO BANK, N.A. v. HEATH
Discussed
 1981 OK 4, 623 P.2d 606, Cartwright v. Atlas Chemical Industries, Inc.
Discussed
 1981 OK 85, 631 P.2d 752, Rose v. Sapulpa Rural Water Co.
Cited
 1926 OK 564, 249 P. 938, 119 Okla. 133, CLIFFORD v. UNITED STATES F. & G. CO.
Discussed
 1998 OK 102, 977 P.2d 1040, 69 OBJ 3512, Akin v. Missouri Pacific Railroad Co.
Discussed
Title 12A. Uniform Commercial Code
 Cite
Name
Level

 12A O.S. 1-201, General Definitions and Principles of Interpretation
Cited
 12A O.S. 3-201, Negotiation
Cited
 12A O.S. 3-205, Special Indorsement; Blank Indorsement; Anomalous Indorsement
Cited
 12A O.S. 3-301, Person Entitled to Enforce Instrument
Discussed