ARNOLD et al. v. McAULIFFE et al.

No. 33514.    May 17, 1949.

Rehearing Denied June 28, 1949.

Second Petition for Rehearing
Denied July 19, 1949.

*209 P. 2d 866.*

Deupree & Linn and McCabe & Elliott, all of Oklahoma City, for plaintiffs in error.

Harry Neuffer and Jean P. Day, both of Oklahoma City, for defendants in error.

GIBSON, J.   The land which is the subject of controversy was the family homestead of Michael Feeney, who died testate seized thereof.   By the terms of the will the land was devised to his wife, Rachael Feeney, for life with remainder to four daughters named.   The life tenant was vested with powers to dispose of the land and use the proceeds in which latter event what was left of such proceeds at death of wife was to be divided among said daughters.   Three of the daughters died prior to the testator, one without issue and the other two survived by children who succeeded to the interests which their respective parents would have enjoyed had they survived the testator and who together with the surviving daughter succeeded to the interest which would have gone to the daughter dying without issue had she survived the testator.   Mary O'Connor, one of the grandchildren, married Thomas P. McAuliffe, and thereafter died, intestate, survived by her husband and one child, Richard M. McAuliffe.   Prior to the death of the widow, and following transactions had with him, the said Thomas P. McAuliffe entered into possession of the premises and has since occupied the same claiming to be the owner thereof.

This action was instituted by the living grandchildren against Thomas P. McAuliffe, Richard M. McAuliffe, his son, Rachael Feeney, also known as Sister Marie Jarlath, the surviving daughter of the testator, and others whose identity is immaterial.

The substance of plaintiffs' petition is that by virtue of the will they became seized as tenants in common of the fee title to said land subject to the life estate of the widow and upon her death became entitled to the possession thereof; that defendant Thomas P. McAuliffe took no title to plaintiffs' interests in the land through a deed executed to him by the life tenant other than as trustee for their use and benefit; and the relief sought is an adjudication of plaintiffs' title, possession and an accounting. By his answer and cross-petition defendant Thomas P. McAuliffe denies plaintiffs' allegations of title and that of the existence of a trust relation, asserts title in himself by virtue of said deed and transactions with life tenant, also open, notorious, exclusive and adverse possession of the premises for more than 21 years, and pleads statutes of limitations and laches, and asks that his title be quieted.

The facts material to the controversy are reflected in the following findings of the trial court which are supported by the evidence:

"2. The court finds the facts to be in this cause that Michael Feeney and Rachael Feeney occupied as husband and wife the premises involved in this suit, and that while thus occupying same, said Michael Feeney departed this life on the 11th day of June, 1911, testate, while such husband and wife were occupying same. That his will was duly probated in the County Court of Oklahoma County and on the 8th day of October, 1912, the final decree therein was entered, which decree concludes as follows:

" 'It is hereby ordered adjudged and decreed by the Court that Rachael Feeney, the widow of said deceased shall have and hold said above described real estate as a homestead during her natural life or sell the above described real estate and use the proceeds therefrom as long as she lives and what is left of the proceeds from said sale of said real estate shall be equally divided among the heirs referred to in said will.'

"3. That said Rachael Feeney continued in the actual occupancy and possession of said premises, receiving the proceeds therefrom until the spring of 1923. That in April, 1922 she became seriously ill and was placed in St. Anthony Hospital in Oklahoma City, Oklahoma, where she remained until her death, August 23, 1928. That after she had been in the hospital for about a year her funds became exhausted and her bills had accumulated considerably and the farm was her only asset. That after consulting with her attorney, Edward R. Reardon, she was advised by him to make some arrangement to dispose of the farm to take care of such accumulated bills. Thereupon, at the request of said attorney the defendant, Thomas P. McAuliffe and John O'Connor, Grandson-in-laws of said Rachael Feeney, endeavored to sell said farm. At one instance they endeavored to sell same for a consideration of $4,000.00 to Clel Mason, but were unable to do so. That at such time the fair market value of said farm was around $4,000.00.

"4. Thereupon, said attorney, Edward R. Reardon, advised that they endeavor to place a mortgage upon the farm to procure funds. Acting upon such advice and at the direction and upon the authority of said Rachael Feeney, a deed of full warranty was executed and delivered to defendant, Thomas P. McAuliffe, to said lands on February 26, 1923, which deed was thereafter filed for record in Oklahoma County on the 2nd day of April, 1923; that said deed was executed and delivered to said defendant with the understanding that he would procure a mortgage thereon and thereafter reconvey same to said Rachael Feeney. That two mortgages, aggregating $1,575.00 were placed upon said premises and the proceeds therefrom kept and held for the use and benefit of said Rachael Feeney.

"5. That on or about April 1, 1923, said attorney, Edward R. Reardon, John O'Connor, father of certain plaintiffs herein, Glessner Geery, notary public, and Thomas P. McAuliffe met with said Rachael Feeney at the hospital for the purpose of reconveying said premises to her. Whereupon, she announced that she had changed her mind and that she did not want the land reconveyed to her; that it was her desire that the title be fully vested in said Thomas P. McAuliffe in consideration that he would pay all her existing bills

and continue to pay all her bills and expenses to the hospital, doctors and otherwise, to which offer, in the presence of all the parties, said Thomas P. McAuliffe in all things accepted said offer

"6. The court further finds that said Thomas P. McAuliffe paid all such bills and provided and cared for said Rachael Feeney with care, devotion and concern. That the actual cash amount paid for her by him, including her funeral expenses, exceeded the fair market value of said farm at the time such agreement was made.

"7. The court further finds that said transaction was open and above board and that no fraud, deceit, deception, over-reaching or undue influence was practiced by said Thomas P. McAuliffe, and the court further finds that there was no confidential or fiduciary relation existing between them at the time of such transaction, except for the short period of time when the deed was placed in the name of Thomas P. McAuliffe and until he returned to the hospital to reconvey the same to her in accordance with their agreement, at which time she refused to accept the same and thereby terminated the agreement by her own overt acts, which act terminated any trust relation existing, and title to said property immediately vested in Thomas P. McAuliffe, as previously stated herein,"

The court further found the facts showing adverse possession for more than 21 years.

As conclusions of law the court found:

"The court finds that by virtue of said will and as the same was construed by the court in its final decree, as above quoted, Rachael Feeney had authority and power to and she did convey to said Thomas P. McAuliffe valid fee simple title, based upon good and sufficient consideration.

"II. The court further finds than an agreement to care, support and pay the bills of one during their natural life is a good, valid and sufficient consideration, and that the consideration for said deed having been fully and in all things complied with as agreed to by the parties the same became an executed contract."

The court also concluded that the action of plaintiffs was barred by the 15-year statute of limitations and by laches.

The court awarded judgment for defendant Thomas P. McAuliffe quieting his title to the land. Plaintiffs appeal.

Being of the opinion that the trial court's conclusion that the defendant Thomas P. McAuliffe became vested with the title independently of the effect of the statute of limitations and of laches to be correct, and that the judgment should be sustained by reason thereof, we shall consider only the assigned errors that are applicable thereto. The propositions presented in support of those assignments are as follows:

"Proposition No. 1.

"That the purported oral agreement between Mrs. Feeney, the life tenant, and Thomas P. McAuliffe was not supported by competent evidence, nor by sufficient evidence.

"Proposition No. 2.

"The purported oral agreement between Mrs. Feeney and Thomas P. McAuliffe, whereby McAuliffe was to retain the land previously deeded to him as a resulting trustee and while a cotenant in remainder, even if proven would be invalid and unenforceable as to these plaintiffs, for the following reasons:

"(a) The oral agreement could not constitute an execution of the power under the laws of this state.

"(b) The power of sale conferred upon Rachael Feeney by the will, being a power in trust, required a sale for cash or a consideration capable of passing into the hands of the remaindermen.

"(c) McAuliffe being a co-tenant with the remaindermen could not acquire an interest in the property adverse to the plaintiffs as his co-tenants.

"(d) Because of his position of resulting trustee, McAuliffe could not acquire the trust res.

"(e) Such an oral agreement would be invalid under the Statute of Frauds."

The force of the propositions is dependent upon two things relied on, neither of which we think exists. One is that the power vested in the life tenant was a power in trust and, the other, that notwithstanding the oral agreement between the life tenant and McAuliffe to terminate the trust and the services performed by the latter in reliance thereon, the outstanding beneficial interest did not pass to him.

As the basis for the contention that the power is one in trust, it is urged that it is contemplated by the will that with the sale of the land the proceeds become substituted for the corpus of the land, and since the use of the proceeds is thus limited to the earning power it is further contemplated that the sale should be for cash or some equivalent and the corpus thereof is to be held in trust for the remaindermen. If such had been the intent of the testator it could have been indicated in no uncertain terms. Considering the value of the homestead which was the only source of a livelihood for the widow, and that the earning power of the proceeds of a sale thereof for its value would be insufficient for the life tenant's support and maintenance, of all of which the testator is presumed to have been advised, we think it clear that it was the testator's intent that the life tenant should use so much of the proceeds of sale as she deemed necessary for her support and maintenance, and such is indicated by the words of the will "and at her death what is left shall be equally divided among the above named heirs". We consider the situation here is not different in principle from that which obtained in Miller v. Irey et al., 150 Okla. 240, 1 P. 2d 654, and, on authority of that case, hold that the power of disposition vested in the life tenant is within the purview of Tit. 60 O. S. 1941 §266, and therefore absolute and not in trust. Such being true, the transactions had between the life tenant and McAuliffe are to be considered as had between parties competent to act in their own interest concerning the subject-matter and the purpose of the consideration is to determine whether the effect thereof was to vest, in the latter, title to premises.

Conceding that, as contended, the effect of the conveyance was to give rise to a resulting trust, it does not follow that the life tenant who had the power to create it and did so for her own benefit was without power to terminate it. The rule is to the contrary. 65 C. J. p. 360, §136, and cases cited. In such situation the question is the exercise of the power to contract and it follows, as held in Mullen v. Thaxton, 24 Okla. 643, 104 P. 359:

"A contract may be discharged, at any time before the performance is due, by a new agreement with the effect of altering the terms of the original agreement or of rescinding it altogether; and a claim under the original contract may then be met by the new agreement, so far as the latter operates to alter or rescind the former."

And it has been decided by other courts that the release of the equitable interest may be by parol. In Gorrell et al. v. Alspaugh et al., 120 N. C. 362, 27 S. E. 85, 87 (cited among others to the text), there is said:

"While an equitable interest in land may not be transferred by parol, it may be abandoned or released to the holder of the legal title by matter in pais, provided such intention of the parties is clearly shown. Brown, St. Frauds, sec. 428; 1 Greenl. Ev. sec. 302; 2 Story, Eq. Jur. 770; Cummings v. Arnold, 3 Metc. (Mass.) 494; Faw v. Whittington, 72 N. C. 321; Miller v. Pierce, 104 N. C. 389, 10 S. E. 554; Falls v. Carpenter, 1 Dev. & B. Eq. 237; Banks v. Banks, 77 N. C. 186; Herren v. Rich, 95 N. C. 500; Holden v. Purefoy, 108 N. C. 167, 12 S. E. 848; Taylor v. Taylor, 112 N. C. 27, 16 S. E. 924; Fortune v. Watkins, 94 N. C. 304. In McDougald v. Graham, 75 N. C. 316, Pearson, C. J. says: 'We conclude that by force of sale and the cancellation of the notes and title bond, the defendant became the absolute owner of the land.' In Tay-

lor v. Taylor, 112 N. C. 30, 16 S. E. 924, Avery, J., says: 'Where the vendee enters under a bond for title and has executed notes for the purchase money, which are held by the vendor, the surrender of bond and notes by the holders to the maker and obligor, respectively, has been repeatedly declared such a renunciation as would annul the contract of purchase.'

"It is not disputed that in the settlement of January 8, 1894, it was the clear intention and agreement of the parties that Alspaugh should abandon and release to Hine all interest in the land, and that in pursuance thereof Alspaugh subsequently surrendered Hine's bond for title, and Hine immediately surrendered Alspaugh's notes equal in amount to the full value of the land, and entered in possession of the premises.

"This settlement, being in entire good faith, extinguished all of Alspaugh's equitable rights in said property and, by annexing the beneficial ownership to the legal title, vested in Hine a fee simple estate, certainly as against any of the plaintiffs."

The rule appears to be founded on good reason. The effect of the agreement was to make a sale of premises already conveyed and declaring the consideration therefor. There appears no need for a written promise to convey that which has been conveyed or to establish the consideration, the existence of which is a matter subject to parol proof. In the instant case, however, the result would be the same, except in point of the time of the accomplishment, if the release or transfer of the equitable interest was required to be in writing by the statute of frauds. In Purcell v. Corder, 33 Okla. 68, 124 P. 457, we held:

"(a) The complete performance of said contract on the part of the party seeking to avail herself of its benefits took the case out of the operation of the statute of frauds.

"(b) Such a performance as would take the case out of the operation of the statute of frauds would also take it out of the inhibitions of the statutes of uses and trusts. (Section 7267, Comp. Laws 1909; section 4186; St. Okla. 1890.)"

It follows from what has been said that the judgment of the trial court, which we find to be supported by competent and sufficient evidence, was proper, and since under the views expressed there can obtain no basis for the alleged errors, we deem it unnecessary to consider same in detail.

Judgment affirmed.