OPINION OF THE COURT

Per Curiam.

The order of the Appellate Division should be affirmed, with costs. Whether the general release signed by respondent was the product of economic duress and what effect should be given to it in any event are issues to be resolved by the arbitrator pursuant to the arbitration agreement made by the parties.
On March 31, 1964 respondent Sedlow and three individuals entered into a stockholders agreement with Charles Schlaifer & Company, Inc., an advertising agency and the corporate appellant. On the following day Sedlow and the corporation entered into a related employment agreement. The stockholders agreement and the employment contract contained paral *184 lei arbitration provisions that "[a]ll disputes, differences and controversies arising out of, under or in connection with this agreement shall be settled and finally determined by arbitration”. Differences of opinion between the parties and the assertion by Sedlow of claims under his agreements with the corporation led to the payment by the corporation to him of $5,000, and the execution and delivery to the corporation by him of the familiar form of boiler plate general release, releasing all claims from the beginning of the world to the date of the release with no mention made of either the stockholders agreement or the agreement of employment. Sedlow now seeks arbitration of his claim that under the agreements he is entitled to 5% of the corporate profits and 5% of the corporate stock. The controversy between the parties which is presented to us focuses not on the merits of Sedlow’s substantive claim but only on what effect the general release had on the arbitration provisions of the prior agreements.
The contention of the. corporation that the effect to be given the general release should be determined by the courts and that the courts should conclude that it operated to wipe out the arbitration agreements ignores the separability of provisions as to forum selection from the substantive provisions of an agreement, fails to recognize the character and function of a general release, and overlooks the significance of our pertinent decisions. In Matter of Minkin (Halperin) (279 App Div 226, affd 304 NY 617), on which the corporate appellant and the dissenter rely so heavily, we were confronted with an instrument of cancellation, by which the parties had expressly agreed that their prior agreement "is hereby cancelled and declared of no further force and effect, and said agreement shall be interpreted as though it had not been executed”— that is, there was a complete nullification, ab initio, of every provision of the prior agreement, including its arbitration clause.*
To be sharply distinguished from such an instrument of *185 obliteration is a general release of claims, particularly where, as here, it has been executed and delivered in exchange for the payment of a significant sum of money. A general release is based on the assumption that there was a prior valid agreement out of the substantive provisions of which certain asserted claims had arisen, and manifests a subsequent agreement pursuant to which those claims have been given up and released. In legal effect then a general release accompanying a settlement of a substantive dispute is a form of contract termination with respect to the substantive rights of the parties under the original agreement. Unlike a cancellation, however, it falls short of a complete nullification of every provision of the prior agreement both substantive and procedural. Thus in the absence of express provision to the contrary, where the differences between the parties relate only to the substantive terms of their agreement, they will be held in releasing claims to have dealt only with such substantive rights and obligations, not with the separate and distinct subject of choice of the arbitration forum for the resolution of disputes.
Once the parties to a broad arbitration clause have made a valid choice of forum, as here, all questions with respect to the validity and effect of subsequent documents purporting to work a modification or termination of the substantive provisions of their original agreement are to be resolved by the arbitrator (cf. Matter of Stein-Tex [Ide Mfg. Co.], 9 AD2d 288, mot for lv to app den 7 NY2d 711; Matter of Lipman [Haeuser Shellac Co.] 289 NY 76). Because voluntary arbitration is the creature of contract it is of course open to the parties in any instrument in which they modify the substantive provisions of their original agreement, as well to provide explicitly for modification or termination of their agreement to arbitrate. (See Matter of American Ins. Co. [Messinger—Aetna Cas. & Sur. Co.] 43 NY2d 184, 193-194; County of Sullivan v Edward L. Nezelek, Inc., 42 NY2d 123, 128.) In the case now before us, however, there is no reference either in the general release or in the October 12, 1976 letter of transmittal to Sedlow’s right to seek arbitration. Nor is there any indication that when the general release was executed it was the intention of the parties to cancel or terminate their agreement to arbitrate, as well as to settle their substantive differences.

 We held in Minkin that whether the cancellation agreement had been induced by coercion and duress was an issue to be resolved by the court. Entirely aside from the distinction, which is critical for present purposes, between a cancellation and a general release, it may be that, while questions as to the scope and effect of a cancellation agreement would be for the court, issues as to coercion or fraud in its inducement would now be held to be for the arbitrator in view of our subsequent decision in Matter of Weinrott [Carp] (32 NY2d 190).