SHAWNEE HOSPITAL AUTHORITY, an Oklahoma public trust d/b/a The Shawnee Medical Center Hospital, Plaintiff–Appellee,

v.

DOW CONSTRUCTION, INC. and Federal Insurance Company, Defendants–Appellants,

and

Ammerman/Thomas & Associates, Inc., Defendant.

No. 66960.

Supreme Court of Oklahoma.

Dec. 26, 1990.

Rehearing Denied July 26, 1991.

John B. Hayes, Suzanne E. Broadbent, Looney, Nichols, Johnson & Hayes, Oklahoma City, for defendants-appellants.

George D. Davis, McKinney, Stringer & Webster, Oklahoma City, for plaintiff-appellee.

OPALA, Vice Chief Justice.

The sole question for us to answer today is whether, in this post-dismissal proceeding to enforce a settlement agreement, the trial court correctly ruled that the earlier contract's arbitration clause is not enforceable for resolution of claims left unresolved by the settlement's express terms? We answer in the affirmative.

## I.

### THE ANATOMY OF LITIGATION

This appeal stems from denial of Dow Construction Inc.'s [Dow] request to compel arbitration of a latent-defect claim in connection with a hospital building project. Shawnee Hospital Authority [Hospital] and Dow entered into a contract to construct new additions to the hospital. Dow obtained a performance bond from Federal Insurance Company [Federal]. The initial litigation resulted in 1983 from a dispute during the building project's construction phase. Hospital brought a breach-of-contract action against Dow and Federal;[1] the latter parties then counterclaimed against Hospital and sought to compel arbitration.[2] The trial court denied this quest and no appeal was taken from its decision. During the trial, the parties reached settlement of all existing issues stemming from their contractual dealings, excluding expressly from settlement *only* after-arising claims from latent construction defects. Under their court-approved settlement [settlement agreement],[3] the trial court was to retain cognizance of controversies that would arise under its provisions.[4]

Five months after settlement, Hospital sought to reopen the litigation and to enforce the settlement agreement's terms imposing liability for latent defects in the completed contract work. Dow's and Federal's quest for the proceeding's dismissal was unsuccessful,[5] as was also their attempt to compel arbitration of the dispute. The order denying arbitration rests on the trial court's view that the earlier *construction contract's* arbitration clause had been "waived" and that under the settlement's terms the trial court can retain cognizance of Hospital's surviving claims against Dow and Federal for latent or hidden defects.[6] Dow and Federal now seek corrective relief from the trial court's refusal to compel arbitration.[7]

By order of this court further proceedings below stand arrested pending disposi-

1. Ammerman/Thomas and Associates, Inc. [Ammerman], the project architect who designed and engineered the project, was also named as a defendant.

2. Dow also cross-claimed against Ammerman; Ammerman cross-claimed against Dow and brought a third-party action against Sullivan–Toney Engineering (engineers hired by Ammerman).

3. See *infra* note 16 for the pertinent provisions of the Settlement Terms and Mutual Release of All Claims.

4. See *infra* note 16 for the pertinent language of the court's order approving the settlement agreement.

5. Dow and Federal had moved to dismiss Hospital's application to reopen litigation on the following grounds: (1) the court lacks subject matter jurisdiction as well as jurisdiction of the parties, (2) the controversy is subject to binding arbitration and Hospital has not requested arbitration of the dispute, (3) the action fails to state a claim and (4) the parties have settled all of the litigation's controversies.

6. The trial court apparently rested its denial of Dow's and Federal's quest for arbitration on a "waiver-of-arbitration" theory. We need not comment on the applicability of a waiver theory to the issue before us. Suffice it to say that this court will affirm a correct judgment regardless of the trial court's reasons for its rendition. *Benham v. Keller*, Okl., 673 P.2d 152, 154 [1983]; *Utica Nat. Bank and Trust v. Assoc. Prod.*, Okl., 622 P.2d 1061, 1066 [1981]; *Thompson v. Inman*, Okl., 482 P.2d 927, 937 [1971].

7. The denial of a motion to compel arbitration is an appealable interlocutory ("midstream") order. 15 O.S. 1981 § 817(A)(1); Rule 1.60(i), Rules on Perfecting a Civil Appeal, 12 O.S. Supp. 1984, Ch. 15, App.2; *Long v. DeGeer*, Okl., 753 P.2d 1327, 1328, n. 1 [1988].

15 O.S. 1981 § 817 provides in pertinent part:

tion of this appeal. We now dissolve the mid-appeal stay order and hold that the construction contract's arbitration clause is no longer enforceable in this post-dismissal proceeding to resolve the latent-defect claims. This is so because the settlement agreement is complete in itself and supersedes all prior agreements of the parties.[8]

## II.

## FOR LITIGATION OF THE LATENT–DEFECT CLAIMS THE SETTLEMENT AGREEMENT *SUPERSEDES* THE CONSTRUCTION CONTRACT

Dow and Federal assert that the trial court misconstrued the settlement agreement as well as the construction contract. They point to the settlement terms dictated into the record of the earlier court proceedings and to specific language in the court-approved settlement documents. Both the construction contract and the performance bond, they argue, remain in force and govern Dow's obligation to correct latent defects as well as its right to have any related dispute resolved by arbitration. They assert that their participation in the settlement proceedings did not operate to "waive" their right to arbitration of latent-defect claims, which survived the construction contract. We cannot accede to this view.

At issue here is the availability of the construction contract's arbitration clause for resolution of Hospital's latent-defect claims under the settlement agreement. Like any other promise-based obligation, a settlement agreement is governed by the principles of contract law.[9] A contract must be considered as a whole to give effect (1) to all its provisions without narrowly overfocusing on some clause or language taken out of context[10] and (2) to the parties' intent at the time the contract was formed.[11]

Before full performance, contractual obligations may be discharged by a subsequent agreement whose effect is to alter, modify or supersede the terms of the original agreement or to rescind it altogether.[12] A claim under an earlier contract will be governed by a later agreement if the latter operates to supersede or rescind the former.[13] Where not expressly stated, the legal effect of the later contract on the former must be gathered from a four-corners' examination of the contractual instru-

"A. An appeal may be taken from:
1. An order denying an application to compel arbitration made under Section 3 of this act:

    \*    \*    \*    \*    \*    \*

B. The appeal shall be taken in the manner and to the same extent as from orders of judgments in a civil action."

8. *None of the parties questions (by their mid-appeal briefs) that in the procedural context in which this cause came to be submitted below and now stands for our review the trial court had cognizance either to compel arbitration or to hold—as it did here—the arbitration clause no longer enforceable.*

9. *Wray v. Sumerset Oil Co.,* 89 Okl. 71, 213 P. 836, 837 [1923]; see also *Florida Education Association, Inc. v. Atkinson,* 481 F.2d 662, 663 [5th Cir.1973]; *Kaiser Aluminum & Chemical v. Ingersoll-Rand Co.,* 519 F.Supp. 60, 71 [S.D.Ga. 1981].

10. 15 O.S. 1981 § 157; *Mercury Inv. Co. v. F.W. Woolworth Co.,* Okl., 706 P.2d 523, 529 [1985].

11. 15 O.S. 1981 § 152; *Mercury Inv. Co. v. F.W. Woolworth Co., supra* note 10 at 529.

12. The terms of 15 O.S. 1981 § 237 provide: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." See also *Mullen v. Thaxton,* 24 Okl. 643, 104 P. 359, 360 [1909]; *Webb v. Moran,* 186 Okl. 140, 96 P.2d 308, 311 [1939]; *Sinclair Refining Co. v. Roberts,* 201 Okl. 358, 206 P.2d 193, 197 [1949]; *Arnold v. McAuliffe,* 201 Okl. 639, 209 P.2d 866, 870 [1949], cert. denied, 338 U.S. 950, 70 S.Ct. 487, 94 L.Ed. 586 [1950]; *Coston v. Adams,* 203 Okl. 605, 224 P.2d 955, 961 [1950]; *Richardson v. Lawler,* 204 Okl. 484, 231 P.2d 671, 673-674 [1951].

13. *Mullen v. Thaxton, supra* note 12; *Arnold v. McAuliffe, supra* note 12.

ment in question.[14]

▪ Measured by the articulated rules, the settlement agreement in suit, when construed as a whole from its four corners, does not support the conclusion that Hospital's after-arising latent-defect claims from Dow's completed construction work are subject to arbitration.[15]

The settlement agreement in suit is a multi-party agreement among Hospital, Dow, Federal and the project architect. It affects *three separate contracts*—one with the architect, the construction contract and the surety's obligation on the performance bond. The provisions of the settlement agreement are *embodied in two* court-approved documents—a "Mutual Release Of All Claims" as well as the "Settlement Terms" that were signed by the parties and approved by the court.[16]

The court-approved agreement extinguished Dow's obligation to continue its performance under the construction contract and authorized Hospital to engage new contractors to complete the project. Dow and Federal were not released from their preexisting contractual obligations to remedy latent defects, if any, should arise from work already performed. The terms of settlement contain no express provision for arbitration of these after-arising latent-defect claims. Rather, the settlement provides that the trial court, sitting without a jury, would retain cognizance to entertain proceedings brought to enforce the terms of the settlement agreement. *It is clear from the wording of paragraph 4 of the Settlement Terms, which we quote in footnote 16, that the pre-existing construction contract clauses came to be terminated in*

**14.** *Mercury Inv. Co. v. F.W. Woolworth Co.*, supra note 10; *Snow v. Winn*, Okl., 607 P.2d 678, 682 [1980]; *Sunray Packing Co. v. Wilson*, Okl., 268 P.2d 264, 267 [1954].

**15.** We construe the agreement from its four corners because we find no latent uncertainty in the agreement's meaning which could be explained by parol evidence. The ambiguity, if any, is patent and must be dealt with as a matter of law. See *Mercury Inv. Co. v. F.W. Woolworth Co.*, supra note 10 at 529; *Ollie v. Rainbolt*, Okl., 669 P.2d 275, 279 [1983].

**16.** See below pertinent provisions of the *Settlement Terms*, *Mutual Release* and *Order* adopting the Settlement Agreement, which are quoted and paraphrased in part:

The material provisions of the May 24, 1985 *Settlement Terms* are:

1) The architect will pay the hospital $2,300,000 and be reinstated as project architect; the original owner/architect agreement shall be set aside and rescinded; the architect shall be paid the balance due under original contract but all redesign work will be the architect's expense.

2) The architect will pay Dow $550,000; and Hospital shall become owner of all paid stored equipment and materials purchased for use on the hospital project.

3) Hospital shall retain all unexpended project funds on hand free from claim by Dow and Federal.

4) "The Standard Form of Agreement Between Owner and Contractor existing between ... Hospital and ... Dow, dated February 2, 1983, is hereby terminated with respect to any further performance obligations on the part

of ... Dow and Federal, *but such termination does not release any obligations which Dow or Federal might have under the contract or the performance bond with respect to hidden or latent defects in the contract work heretofore completed....*" (Emphasis supplied.)

5) The parties shall dismiss with prejudice their actions, cross-claims and counterclaims upon court approval.

6) "The court *shall retain jurisdiction to reopen the case,* if necessary, to conclude this litigation by non-jury trial or *to enforce the terms of this Settlement Agreement."* (Emphasis added.)

7) Dow and Federal will hold Hospital harmless from all claims and demands of Dow's subcontractors, suppliers and vendors.

8) Hospital was authorized to enter into a court-approved contract for construction of redesigned portions of the hospital additions.

The May 25, 1985 *Mutual Release* states in part: "In consideration of the mutual covenants, agreements and undertakings as set forth in a document entitled "Settlement Terms" the parties agreed to discharge each other from all claims made or could have been asserted. Excepted from this release were all "claims and obligations under said Contract and bonds which are fully outlined in Exhibit 'A' [Settlement Terms] hereto."

The *trial court's order,* which approved the settlement agreement, states in part:

"[The] Court shall *retain jurisdiction to reopen this action* if necessary to conclude this litigation as to the parties to this Settlement Agreement by non-jury trial or *to enforce the terms of this Settlement Agreement."* .(Emphasis added.)

all respects except for potential obligations of Dow or Federal for after-arising hidden or latent defects. When read as a whole, these critical settlement provisions make it clear that Dow's and Federal's *rights and liabilities under the construction contract were discharged and stood superseded* by the settlement agreement. The express terms of the latter agreement negate the notion now sought to be invoked—that while the construction contract itself came to be terminated, a portion of that contract, which reserved the right to litigate after-arising latent-defect claims, left intact the provisions to resolve such disputes by arbitration.

In short, we hold that the earlier construction contract's arbitration clause is not invocable to resolve Hospital's after-arising latent-defect claims reserved by the settlement agreement. The settlement's terms are complete in themselves and supersede all prior agreements of the parties. When called upon to resolve these post-settlement claims on remand, the trial court is to look solely to the settlement agreement.

THE TRIAL COURT'S ORDER REFUSING TO COMPEL ARBITRATION IS AFFIRMED; CAUSE REMANDED WITH DIRECTIONS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.

HARGRAVE, C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

HODGES, SIMMS, DOOLIN and ALMA WILSON, JJ., dissent.