Matter of City of Cortland v Cortland Police Benevolent Assn. (2004 NY Slip Op 50196(U))

[*1]

Matter of City of Cortland v Cortland Police Benevolent Assn.

2004 NY Slip Op 50196(U)

Decided on February 9, 2004

Supreme Court, Cortland County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 9, 2004

Supreme Court, Cortland County
In the Matter of the Application of CITY OF CORTLAND, Petitioner,
against
CORTLAND POLICE BENEVOLENT ASSOCIATION and TIMOTHY J. ARMSTRONG, Respondents.
Index No. 38290

COUGHLIN & GERHART, LLP
By: Joseph J. Steflik, Jr., Esq.
Attorneys for Petitioner
20 Hawley Street
P.O. Box 2039
Binghamton, New York 13902-2039
LAW OFFICES OF JAMES B. TUTTLE
By: James B. Tuttle, Esq.
Attorneys for Respondents
634 Madison Avenue
Albany, New York 12208

Phillip R. Rumsey, J.
Petitioner, the City of Cortland, seeks an order staying the arbitration being pursued by respondents in connection with Timothy Armstrong's resignation from the City's police force on June 9, 2003. After Armstrong, faced with the possibility that disciplinary charges would be lodged against him, resigned his position as a police officer, he apparently had second thoughts, and attempted to rescind his resignation. When that attempt was rejected, respondents filed a grievance with the Chief of Police, alleging that petitioner had violated several of Armstrong's contractual rights in connection with the proceedings leading up to his resignation. As a result, respondents maintained, Armstrong's resignation had been improperly "coerced", and should not stand.
At the first stage of the grievance process, and also at the second stage (when the grievance is referred to the Mayor), petitioner's representatives took the position that because Armstrong had voluntarily resigned his position, there was "no grievable issue pursuant to the [parties'] collective bargaining agreement" (Letter of James C. Nichols, Chief of Police, dated June 18, 2003; see also, Letter of Andrew J. Damiano, Director Administration & Finance, dated July 8, 2003). The grievance having thus been rejected, respondents filed and served a demand for arbitration, which constitutes the third stage of the contractual grievance procedure.
Petitioner's counsel responded by letter dated July 29, 2003, expressing his view that the matter was not grievable nor arbitrable, because it involved a voluntary resignation. Respondents indicated that they disagreed and intended to pursue the arbitration, prompting petitioner to ask the American Arbitration Association (AAA) to close the file. Respondents' counsel registered his objection to this request in writing, and apparently the AAA was not persuaded by petitioner's [*2]arguments, as an arbitrator was appointed on September 8, 2003, and the arbitration was ultimately scheduled for February 10, 2004.
In support of its present application to stay the arbitration, petitioner contends that Armstrong's written resignation, incorporating an express waiver of his right to arbitrate under the contract, constitutes a "collateral contract" which, until it is declared invalid in a plenary action for recission, eliminates his right to pursue the remedies provided by the original agreement (see, Minkin v Halperin, 279 App Div 226, 228, affd 304 NY 617). Petitioners also rely on a case in which a stay was granted because, having voluntarily resigned, a former City employee was no longer covered by the collective bargaining agreement affording the right to arbitration (see, e.g., Rensselaer County Local 842 v City of Troy, 169 AD2d 871).
Respondents' argument that petitioner is precluded from bringing this proceeding due to its "participation" in the arbitration, by returning a form relating to the choice of an arbitrator and seeking an adjournment (while concurrently repeating its objection to proceeding in that forum, and its position that the subject dispute is not arbitrable), is unconvincing (cf., Matter of Mix Centre, Ltd. [Butler], 221 AD2d 182; Matter of IMG Publ. [Viesti], 170 AD2d 268). And, given respondents' failure to include a "20-day notice" in their demand for arbitration, petitioner cannot be faulted for failing to seek a stay until just before the arbitration was scheduled to take place (see, Matter of Filippazzo v Garden State Brickface Co., 120 AD2d 663, 664-665).
Turning to the merits of petitioner's application, it has been held that a party's mere resignation from employment governed by a collective bargaining agreement, standing alone, does not rise to the level of a separate "contract" between the parties, entirely cancelling their original agreement to arbitrate, in the same way as did the collateral agreement at issue in Minkin (see, Matter of Sarle [Sperry Gyroscope], 4 AD2d 638, 640-641, affd 4 NY2d 917).[FN1] In Sarle, an individual's purported resignation was found to essentially constitute "a particular act done in the performance of [the existing] agreement, or in violation thereof" (id., at 641), rather than a separate contract cancelling that agreement. Accordingly, the validity of such a resignation - which, as in the present case, may have depended on whether other rights conferred by the contract were violated - was held to be an issue for the arbitrator, not the court.
 In the instant case, however, Armstrong not only resigned his position, he also expressly waived the right to arbitrate disputes arising under the collective bargaining agreement. The question of whether a party has waived the right to arbitrate has sometimes been deemed a matter to be resolved by the courts, within the scope of a CPLR article 75 proceeding (see, Matter of County of Suffolk v Novo, 96 AD2d 902, 903), at least where the alleged waiver was the result of conduct within the judicial system, not involving the merits of the underlying dispute in any way (see, Sherrill v Grayco Bldrs., 64 NY2d 261, 272). The rationale of those holdings does not apply here, however, for any determination of the validity of Armstrong's waiver would necessarily involve the very matters with respect to which arbitration is being sought.
The court is unaware of any decision squarely determining whether bona fide issues as to the validity of an express, written waiver of the right to arbitrate, alleged to have been procured by duress or coercion, involving alleged violation of contractual rights that form the basis of the dispute to be arbitrated, should be resolved by the court or left to the arbitrator (but see, Matter of Schlaifer v Sedlow, 51 NY2d 181, 184, n.*). While it is now settled that allegations of coercion, duress, or fraud in the inducement of the substantive provisions of a contract containing an arbitration clause must be decided by the arbitrator (see, Matter of Weinrott [Carp], 32 NY2d [*3]190, ), where the challenge is to "the validity of the arbitration clause itself," the issue remains one for the court (see, Teleserve Sys., Inc. [MCI Telecommunications Corp.], 230 AD2d 585, 592). Similarly, where the controversy centers on the validity of a waiver of an arbitration clause, per se, the dispute goes right to the heart of whether there still exists a valid agreement to arbitrate, and would arguably come within the scope of the court's review in an article 75 proceeding (CPLR 7503 [b]; cf., Metalink Marine Corp. v Ned Chartering & Trading, Inc., 207 AD2d 688, 690 ["Unless the documents which purport to terminate the parties' original agreement relate to the arbitration clause, the question of whether or not termination occurred is properly to the decided by the arbitrator"(emphasis added)]).
Nevertheless, in none of these cases did the very issue that would be decided by the court, in resolving the "threshold" question of waiver, involve the same allegations of wrongdoing that would be the subject of the arbitration. Nor was that issue addressed in Matter of Unit No. 8251, Rensselaer Co. Local 842 of CSEA, Inc. [City of Troy] (169 AD2d 871, 872), for there, the petitioner failed to come forth with any proof raising a factual question as to the voluntariness of his resignation. Hence, the issue of whether there remained a valid agreement to arbitrate the subject dispute, in light of that resignation, was entirely separate from the underlying questions that would be resolved by the arbitrator, and could be determined by the court without running afoul of the proscription against straying into the merits of the underlying controversy.
Here, however, respondents have tendered a factual affidavit from Armstrong himself, detailing the events of June 9, 2003 (Affidavit of Timothy Armstrong, dated February 3, 2004). If this account were credited, and the contrary version recounted by petitioner's witness rejected, it could provide the basis for a finding that Armstrong's waiver of his right to arbitrate was not voluntary, and must be disregarded (see, People v Ventura, 139 AD2d 196, 201). While the mere existence of a factual question does not necessarily preclude the determination of an issue that is otherwise within the scope of the court's jurisdiction under article 75 (see, CPLR 7503 [a]), resolution of the factual dispute presented here - and hence, of the very question before the court, to wit, whether there remains a valid agreement to arbitrate - is inexorably intertwined with the very issues that respondents seek to arbitrate.
Thus, bearing in mind that "the court must assiduously avoid usurping the functions of the arbitrator by deciding the merits of a grievance in the guise of determining the scope of the agreement to arbitrate" (New York State Ass'n for Retarded Children, Inc. v. Carey, 456 F.Supp. 85, 95), this court is of the view that the more prudent course is to leave the matter of the validity of Armstrong's waiver to the arbitrator. To conclude otherwise would be to essentially usurp the arbitrator's role, for if the court were to resolve the "threshold" issue - the voluntariness of Armstrong's resignation - in respondents' favor, there would remain nothing left to arbitrate. Thus, even if respondents were to "win" in court, on the issue of arbitrability, they would nevertheless have been effectively forced to litigate the very issue that was ultimately deemed arbitrable.
Accordingly, the petition is hereby dismissed. This decision shall constitute the order and judgment of the court.
Dated: February 9, 2004
Cortland, New York
HON. PHILLIP R. RUMSEY
Supreme Court Justice
Decision Date: February 09, 2004
Footnotes

Footnote 1:Moreover, in Minkin, it was expressly noted that the question of whether the cancellation agreement was induced by coercion was "not a controversy or claim arising out of, nor does it have relation to, the agreement" containing the arbitration clause (Matter of Minkin, at 228). Such is not the case here, for respondent's allegations of coercion are closely related to the agreement containing the arbitration clause; indeed, they arise directly from the rights bestowed by that agreement.