MAASSEN, Justice.
I. INTRODUCTION
The parties entered into a construction subcontract that contained a broad dispute resolution provision. When disputes arose, the parties engaged in mediation as their subcontract required, reaching a settlement agreement by which they each "absolutely release[d] the other of and from any and all claims, demands and obligations of any kind arising from [the subcontract]." The settlement agreement, unlike the subcontract, contained no dispute resolution provision.
Two weeks after settlement the subcontractor filed suit against the contractor in superior court, seeking damages and an order setting aside the settlement agreement on grounds that the contractor had concealed facts that made it difficult for the subcontractor to obtain releases essential to the settlement. The contractor moved to dismiss, arguing that the subcontractor's claims were subject to the subcontract's dispute resolution provision. The superior court granted the contractor's motion and awarded it attorney's fees. The subcontractor appealed.
We conclude that the case should not have been dismissed because the parties, by the express language of their settlement agreement, released each other from "any and all" obligation to engage in dispute resolution as required by the subcontract. We therefore reverse the superior court's judgment and remand for further proceedings.
II. FACTS AND PROCEEDINGS
A. Facts
The parties assumed the following facts to be true for purposes of the motion to dismiss giving rise to this appeal.
In early 2016 Jet Commercial Construction, LLC (Jet), an Oklahoma corporation, entered into a contract with Kona Grill, Inc., for the construction of a restaurant in Honolulu, Hawaii. In May Jet entered into a subcontract with SMJ General Construction, Inc. (SMJ), an Alaska corporation, "to supply the materials and labor for the construction of the building and other improvements." The subcontract contained a dispute resolution provision that required the parties to first mediate any dispute and then submit it to arbitration if mediation was unsuccessful. The subcontract also included a choice-of-law and venue provision designating Oklahoma law and the courts of Cleveland County, Oklahoma for any lawsuits "pertaining to the enforcement of the provisions of this Agreement."
*212 The parties had a number of disputes during construction. SMJ alleged, among other things, that after it bid on the basis of one set of building plans Jet switched them for another; that Jet failed to give SMJ the money necessary to pay its sub-subcontractors and suppliers and paid some of them directly, without SMJ's knowledge and with money Jet owed to SMJ; and that Jet constantly revised the building plans and ignored the change-order process set out in the subcontract.
The parties mediated their disputes as required by the subcontract's dispute resolution provision. On January 5, 2017, with the assistance of a professional mediator, they reached the following three-paragraph, handwritten settlement agreement:
Parties agree as follows:
(1) Each party hereby absolutely releases the other of and from any and all claims, demands and obligations of any kind arising from contract of May 2016 regarding Kona Grill, Honolulu project. SMJ will execute and deliver Release of all claims and waiver of liens. Mr. Chang will sign same individually. Counsel for Jet to prepare release.
(2) Jet will pay to SMJ the sum of $150,000.00 if SMJ will deliver to Jet within 30 days of today's date a fully executed release of all claims and lien waiver from Dong Hwan Kim individually and Hyan [sic] Yang Construction, said release & waiver to be notarized and on the form prepared by Jet's counsel.
(3) This yellow memorandum reflects the essential & material terms of the parties' agreement and will be followed by a more formal memorialization of same, to be prepared by Jet's counsel.
Tyson Chang was SMJ's president, and Han Yang Construction, owned by Don Hwan Kim, was one of SMJ's sub-subcontractors on the project. Neither Jet nor SMJ asserts that "a more formal memorialization of" the handwritten agreement, as contemplated by paragraph 3, was ever prepared.
Soon after the agreement was reached, SMJ learned of conduct by Jet, preceding the mediation, that impaired SMJ's ability to obtain the release from its sub-subcontractor, Han Yang Construction, as required by paragraph 2 of the settlement agreement. According to SMJ, Jet falsely informed a city inspector that Han Yang Construction had contracted directly with Kona Grill. SMJ alleged that Jet created a fictitious agreement to show this contractual relationship, signed the fictitious agreement on behalf of Kona Grill as the "Owner's rep" when it lacked the authority to do so, and filed the fictitious agreement with the City of Honolulu. SMJ asserts that Jet "concealed material facts from SMJ [during the mediation], namely that its fraudulent actions rendered the condition precedent to the settlement impossible for SMJ to comply with."
B. Proceedings
Two weeks after the mediation, SMJ filed a complaint in superior court. The complaint alleged three causes of action: fraud and misrepresentation, breach of the covenant of good faith and fair dealing, and negligence. It sought a ruling that the settlement agreement was void and "[a] money judgment against [Jet] in the principal amount of $782,061.48."
SMJ had unusual difficulty effecting service of process on Jet in its home state of Oklahoma. But Jet, through counsel, eventually filed a motion to dismiss pursuant to Alaska Civil Rule 12(b)(3) (improper venue) and (6) (failure to state a claim), while asserting a right to contest personal jurisdiction later. Jet argued that SMJ's claims were not properly before the court because of the subcontract's dispute resolution provision and the requirement that suits be filed in Oklahoma. In opposition, SMJ argued that the parties could no longer rely on the subcontract's dispute resolution and forum selection provisions because the subcontract was entirely superseded by the settlement agreement.
The superior court granted Jet's motion to dismiss in a perfunctory order stating only that it had considered Jet's motion "and the arguments and briefs of the parties." The court entered final judgment in Jet's favor *213 and awarded it attorney's fees as the prevailing party. SMJ appealed both the order of dismissal and the attorney's fees award.
While the appeal was pending, SMJ filed a request for mediation with the American Arbitration Association (AAA). In October 2017 the AAA forwarded the mediation request to Jet and asked that the parties agree on a mediator. SMJ suggested several names to Jet and, alternatively, that the parties "re-convene telephonically with the mediator who did the first one in January." But the AAA received no response from Jet and later "put the matter on hold at SMJ's request."
SMJ then moved in superior court for relief from final judgment pursuant to Alaska Civil Rule 60(b), alleging that Jet's refusal to engage in mediation - after insisting on it as grounds for dismissing SMJ's lawsuit - constituted both newly discovered evidence and a change in circumstances that justified relief. Jet opposed the motion. It conceded that it had "not leaped at the chance to conduct another mediation with [SMJ]" but disputed that its failure to mediate constituted "new evidence" for purposes of Rule 60(b). It contended that SMJ could still demand arbitration and have the arbitrator determine whether mediation was mandatory, or, alternatively, that it could ask a judge in Oklahoma to decide whether Jet was required to mediate.
The superior court denied SMJ's Rule 60(b) motion, again without explanation, and SMJ filed a second appeal. We combined the two appeals. SMJ challenges the court's grant of Jet's motion to dismiss, its award of attorney's fees, and its denial of the Rule 60(b) motion. Because of our disposition of the first issue, we do not address the others.
III. STANDARD OF REVIEW
"We review grants of motions to dismiss under Civil Rule 12(b)(6) de novo, 'construing the complaint liberally and accepting as true all factual allegations.' "[1] "In reviewing motions to dismiss, we view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party."[2]
"Whether [a] claim is arbitrable is a question of law subject to de novo review."[3] "We review the interpretation of a contract de novo."[4] "When applying the de novo standard of review, we apply our 'independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy.' "[5]
IV. DISCUSSION
The superior court granted Jet's motion to dismiss SMJ's complaint without explaining its reasoning; we assume the court adopted Jet's arguments for dismissal.[6] Jet's primary argument was that SMJ was required to raise its claims in arbitration pursuant to the subcontract's dispute resolution provision. Jet also relied on the subcontract's venue clause, requiring suits on the subcontract to be brought in Oklahoma. But because we conclude that the subcontract no longer governed the parties' rights and obligations once *214 they entered into a subsequent agreement by which they "absolutely release[d] [each] other of and from any and all claims, demands, and obligations of any kind arising from" the subcontract, we find neither of Jet's arguments persuasive.
A. Arbitrability Is A Question For The Courts.
It is the task of the courts to decide whether the parties' two successive contracts - the subcontract and the settlement agreement - require SMJ to arbitrate its claims.[7] As codified in Alaska, the Revised Uniform Arbitration Act provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."[8] This is consistent with federal law.[9] Federal courts presume that parties intend the courts to decide "arbitrability" issues, such as "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."[10] "The presumption that arbitrability is a question for the courts can only be rebutted if the parties have 'clearly and unmistakably provide[d] otherwise.' "[11]
The subcontract, though requiring a specific dispute resolution procedure, does not mention arbitrability. However, the subcontract's dispute resolution provision does provide that disputes "shall be submitted to mediation ... pursuant to the Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association" and that the next step, arbitration, "shall be conducted pursuant to" the same AAA rules and procedures. The AAA rules allow the arbitrator to determine arbitrability.[12] The subcontract's reference to those rules could therefore be read as intending that questions of arbitrability are for the arbitrator, not the courts.[13] But we need not decide whether to imply such an intent here, because whatever obligations the parties had under the subcontract have been explicitly released.
B. The Settlement Agreement Released The Parties From Their Contractual Obligation To Arbitrate Disputes.
When parties have successive contracts addressing the same subject matter, "it is a well settled principle of law that the later contract supersedes the former contract as to inconsistent provisions."[14] A contract's arbitration provision may thus survive the *215 parties' later settlement of claims arising under the contract - but only if it is consistent with the terms of settlement.[15]
Unlike the subcontract, the parties' settlement agreement makes no mention of dispute resolution. The first paragraph of the settlement agreement reads: "Each party hereby absolutely releases the other of and from any and all claims, demands and obligations of any kind arising from contract of May 2016 regarding Kona Grill, Honolulu project." We interpret a settlement agreement the way we would any other contract,[16] giving the words "their ordinary, contemporary, common meaning" unless they are "otherwise defined."[17] The phrase "any and all claims, demands and obligations of any kind arising from [the subcontract]" could hardly be broader. Jet's demand for arbitration and SMJ's obligation to participate have no source other than the dispute resolution provision of the subcontract. And the parties expressly released each other from "any and all ... obligations" under that provision by the settlement agreement's plain language.
In Borough of Atlantic Highlands v. Eagle Enterprises, Inc. ,[18] a New Jersey court addressed a similar situation in language we find helpful. A contract for construction of a new borough building contained a mandatory arbitration clause.[19] A number of disputes arose between the borough and the contractor over delays and payments; they eventually settled by entering into an agreement that said, among other things, that their "Contract [was] completed and this Agreement constitutes full and final satisfaction of all claims for compensation and neither party has any further claims for compensation or damages against the other."[20] Two months later, the contractor made a claim for additional costs under the original construction contract, asserting in a letter to the borough that the settlement had been procured by duress.[21] Then the contractor, "assum[ing] the continued existence of the arbitration clause in the original construction agreement," demanded that its claim be arbitrated pursuant to the AAA rules.[22]
The trial court held that the parties' settlement agreement did not abrogate the construction contract's arbitration clause, but the appellate court reversed.[23] It held that the construction contract, "which included the arbitration clause in issue, appears to have been knowingly canceled and settled-out by virtue of the" settlement agreement, particularly by its stipulation "that [the] Contract is completed" and neither party retains "any further claims for compensation or damages against the other."[24] The court concluded: "We are at a loss as to how we might interpret this unambiguous language to mean anything other than that the original construction contract was to be regarded as history."[25]
*216 The Oklahoma Supreme Court considered a similar situation in Shawnee Hospital Authority v. Dow Construction, Inc.[26] The hospital entered into a construction contract with the contractor for hospital additions.[27] Disputes arose and the parties reached a settlement agreement that resolved all issues except "after-arising claims from latent construction defects," with the trial court "retain[ing] cognizance of controversies that would arise under [the settlement agreement's] provisions."[28] When the hospital later brought latent-defect claims in court, the contractor argued that the claims were subject to the construction contract's arbitration provision.[29] The supreme court affirmed the trial court's holding that the arbitration provision was waived by the settlement agreement, pointing to specific language in the settlement agreement that the construction contract was "hereby terminated with respect to any further performance obligations on the part of" the contractor except "with respect to" latent-defect claims and that the "court shall retain jurisdiction to reopen the case, if necessary, to conclude this litigation ... or to enforce the terms of this Settlement Agreement."[30] The court held that the contractor's "rights and liabilities under the construction contract were discharged and stood superseded by the settlement agreement."[31]
The language Jet and SMJ used to settle their differences was as direct and unambiguous as that in Borough of Atlantic Highlands and Shawnee Hospital Association : each party "absolutely release[d] the other of and from any and all claims, demands and obligations of any kind arising from" the subcontract. Like the New Jersey court in Borough of Atlantic Highlands , we cannot "interpret this unambiguous language to mean anything other than that the original construction contract was to be regarded as history."[32] And absent that original contract, the parties had no obligation to arbitrate their claims.
The foregoing rationale also disposes of Jet's claim that the parties remain bound by the subcontract's choice-of-law and venue provisions. We note, however, that our decision today is based on the limited record presented on a motion to dismiss. We do not preclude the superior court's consideration on remand of extrinsic evidence that contradicts the plain meaning of the parties' settlement agreement, if any exists.[33] We also do not address what happens if SMJ succeeds in having the settlement agreement set aside - specifically whether the parties' rights and obligations, including those pertaining to dispute resolution, revert to what they were under the subcontract.[34]
V. CONCLUSION
We REVERSE the judgment of the superior court and REMAND for further proceedings consistent with this opinion. The award of attorney's fees to Jet is VACATED.

Cornelison v. TIG Ins. , 376 P.3d 1255, 1267 (Alaska 2016) (quoting Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res. , 335 P.3d 1088, 1092 (Alaska 2014) ).

Id.

Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc. , 354 P.3d 368, 371 (Alaska 2015) (alteration in original) (quoting Lexington Mktg. Grp., Inc. v. Goldbelt Eagle, LLC , 157 P.3d 470, 472 (Alaska 2007) ).

Mahan v. Mahan , 347 P.3d 91, 94 (Alaska 2015) (quoting Villars v. Villars , 277 P.3d 763, 768 (Alaska 2012) ).

Alaska Fur Gallery, Inc. v. Tok Hwang , 394 P.3d 511, 514 (Alaska 2017) (quoting ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc. , 322 P.3d 114, 122 (Alaska 2014) ).

See Alaska Wildlife Alliance v. State , 74 P.3d 201, 206 (Alaska 2003) (observing that although an appellate court will sometimes remand for an explanation if a trial court grants summary judgment without identifying which of multiple theories it found persuasive, "[i]n most cases involving dismissal or summary judgment, the grounds for the superior court's ruling can be discerned from the parties' motion papers"); Hoekzema v. State , 193 P.3d 765, 771 (Alaska App. 2008) (noting that because the judge "offered no explanation for his ruling" in favor of the State on a sentencing issue, the reviewing court "presume[s] that the judge adopted the prosecutor's argument").

Neither party argues that we should apply any law other than Alaska's to the questions of arbitrability and contract interpretation raised on this appeal.

AS 09.43.330(c) ; see also Classified Emps. Ass'n v. Matanuska-Susitna Borough Sch. Dist. , 204 P.3d 347, 353 (Alaska 2009) ("[A]rbitrability is a threshold question for the court, not the arbitrator.").

Geotek Alaska, Inc. v. Jacobs Eng'g Grp., Inc. , 354 P.3d 368, 372 (Alaska 2015) (citing BG Grp., PLC v. Republic of Argentina , 572 U.S. 25, 34, 134 S.Ct. 1198, 188 L.Ed.2d 220 (2014) ).

Id. (footnotes omitted) (quoting BG Grp. , 572 U.S. at 34, 134 S.Ct. 1198 ).

Id. at 376 (alteration in original) (quoting State v. Pub. Safety Emps. Ass'n , 798 P.2d 1281, 1285 (Alaska 1990) ); see also Classified Emps. , 204 P.3d at 353 n.14 ("An exception to [the rule that courts determine arbitrability] applies when the contract clearly provides that the determination of arbitrability is for the arbitrator.").

Am. Arbitration Ass'n, Construction Industry Arbitration Rules and Mediation Procedures R-9 (a) (2015), https://www.adr.org/sites/default/files/Construction_Arbitration_Rules_7May2018.pdf ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.").

See Oracle Am., Inc. v. Myriad Grp. A.G. , 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); Contec Corp. v. Remote Sol. Co. , 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

Juneau Educ. Ass'n v. City & Borough of Juneau , 539 P.2d 704, 706 (Alaska 1975) (quoting NLRB v. Operating Eng'rs Local 12 , 323 F.2d 545, 548 (9th Cir. 1963) ).

Cf. Primex Int'l Corp. v. Wal-Mart Stores, Inc. , 89 N.Y.2d 594, 657 N.Y.S.2d 385, 679 N.E.2d 624, 628 (1997) ("[A]bsent a more specific indication of intent to abandon contractual rights to an arbitration forum, a general release terminating the substantive rights of the parties to the contract will not nullify their obligation to submit to an arbitrator all of the disputes relating to that contract and its termination."); Schlaifer v. Sedlow , 51 N.Y.2d 181, 433 N.Y.S.2d 67, 412 N.E.2d 1294, 1296 (1980) ("[I]n the absence of express provision to the contrary, where the differences between the parties relate only to the substantive terms of their agreement, they will be held in releasing claims to have dealt only with such substantive rights and obligations, not with the separate and distinct subject of choice of the arbitration forum for the resolution of disputes.").

Gaston v. Gaston , 954 P.2d 572, 574 (Alaska 1998) ("Settlement agreements should be interpreted as contracts provided that they meet minimal contractual requirements.").

Norville v. Carr-Gottstein Foods Co. , 84 P.3d 996, 1001 n.3 (Alaska 2004) (quoting State v. Niedermeyer , 14 P.3d 264, 272 n.38 (Alaska 2000) ).

312 N.J.Super. 188, 711 A.2d 407, 410 (1998).

Id. at 408.

Id. at 408-09.

Id. at 409.

Id.

Id. at 408.

Id. at 409-10.

Id. at 410.

812 P.2d 1351 (Okla. 1990).

Id. at 1352.

Id.

Id.

Id. at 1354-55 & n.16 (emphasis omitted).

Id. at 1355 (emphasis omitted).

312 N.J.Super. 188, 711 A.2d 407, 410 (1998).

See Mahan v. Mahan , 347 P.3d 91, 94 (Alaska 2015) ("We examine 'both the language of [a settlement agreement] and extrinsic evidence to determine if the wording of the [agreement] is ambiguous.' " (quoting Villars v. Villars , 277 P.3d 763, 768 (Alaska 2012) )); Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist. , 778 P.2d 581, 584 (Alaska 1989) ("Extrinsic evidence may always be received on the question of meaning.").

See Borough of Atl. Highlands , 711 A.2d at 410 (holding that suit to vitiate settlement agreement "which does not contain an arbitration clause[ ] must first be addressed in [court]," and "[i]f it is found that the [settlement agreement] was induced by fraud or economic duress, then defendant may arbitrate its claim for additional monies in accordance with its demand for arbitration").